COMMONWEALTH *vs.* JEFFREY S. COLLIER, SR.

Middlesex. April 10, 1998. - May 6, 1998.

Present: WILKINS, C.J., LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Protective Order. Abuse Prevention. Intent. Practice, Criminal,* Required find-
ing, Instructions to jury. *Evidence,* Hearsay.

This court reaffirmed the principle enunciated in *Commonwealth* v. *Delaney,*
425 Mass. 587, 595-597 (1997), cert. denied, 118 S. Ct. 714 (1998), that,
in order to convict a defendant of violating a G. L. c. 209A protective
order, the Commonwealth is not required to prove that the defendant
intended to violate the order; however, in the rare circumstances in which
a third party is involved in the act that results in the violation, the Com-
monwealth is required to prove beyond a reasonable doubt the defendant's
intent to direct or acquiesce in the conduct of the third party that resulted
in the violation. [387-389]

At the trial of a complaint for violation of a protective order issued under
G. L. c. 209A, the jury properly could have found that the defendant knew
of the protective order prohibiting him from coming within one hundred
yards of his former wife and had an intent, or shared intent, as a front seat
passenger in an automobile that drove within three feet of his former wife,
to violate the order. [389-390]

At the trial of a complaint for violation of a G. L. c. 209A protective order,
where the evidence fairly raised the question whether the defendant directed
or acquiesced in his son's conduct in driving a vehicle in which the
defendant was a front seat passenger close to the victim, in violation of the
order, the defendant was entitled to an instruction that the Commonwealth
had to prove beyond a reasonable doubt that the defendant had to intend
the act that caused the violation: where the defendant may have been
prejudiced by the absence of the instruction, a new trial was required.
[390]

COMPLAINT received and sworn to in the Lowell Division of
the District Court Department on April 9, 1997.

The case was tried before *William E. Melahn,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Stella Robinson* for the defendant.

*Stephen C. Hoctor,* Assistant District Attorney, for the Com-
monwealth.

GREANEY, J. A jury in the District Court found the defendant, Jeffrey S. Collier, Sr., guilty under G. L. c. 209A, § 7, of violating a protective order because he came within one hundred yards of his former wife and in so doing placed her in fear of imminent serious physical harm.[1] The defendant appealed, and we granted his application for direct appellate review.[2] We must decide whether the Commonwealth was required to prove that the defendant intended to do the act that resulted in the apparent violation. We conclude that such proof was necessary on the evidence in this case. We reject the defendant's argument that his motion for a required finding of not guilty should have been allowed because the Commonwealth's proof of intent was insufficient. We agree, however, that the jury instructions were inadequate because no instruction was given on the intent element. Accordingly, the judgment of conviction must be reversed, and the jury verdict set aside.

The Commonwealth presented the following evidence in its case-in-chief. On April 8, 1997, a judge in the Lowell Division of the District Court Department granted Cheryl Ann Tremblay a one-year extension of a G. L. c. 209A protective order against the defendant. The protective order, among other restrictions, prohibited the defendant from coming within one hundred yards of Tremblay. The defendant, accompanied by another former wife, Sandra Smith, his son (Jeffrey), and Jeffrey's girl friend, Sabrina Pedro, was present in court when the extension was granted. After the hearing, Tremblay, accompanied by her mother, left the court room and walked to the court clerk's office to obtain a copy of the protective order. While they were there, Smith, Jeffrey, and Pedro entered the clerk's office. Tremblay obtained a copy of the protective order, retrieved a can of mace from the court house security desk, and left the building with her mother.

As Tremblay and her mother were walking toward the parking garage where the mother's car was parked, they heard a car across the street, approximately twenty feet away, "revving" its engine. Jeffrey was driving this car with the defendant in the front passenger seat. Tremblay and her mother made direct eye

---

[1]To convict the defendant in this case, the Commonwealth had to show that his conduct constituted "abuse," which includes, among other consequences, "placing another in fear of imminent serious physical harm." G. L. c. 209A, § 1. See *Commonwealth* v. *Gordon*, 407 Mass. 340, 344 (1990).

[2]The defendant is represented by new counsel on appeal.

contact with the defendant. They continued walking toward the parking garage, and when they reached a crosswalk, they saw the same car with the defendant inside, now closer and still "revving" its engine. Tremblay and her mother waited to cross the street in the company of two men (for protection). When they were almost across the street, the car containing the defendant and his son drove by them with "squealing tires" and came within three feet of Tremblay. The car continued on to the parking garage and blocked the exit to the garage. There were other routes the car's driver could have taken to leave the court house area which would have avoided any encounter with Tremblay.

Tremblay and her mother continued on to their car in the parking garage. After they entered the car, Sandra Smith walked up, knocked on the car window, and yelled, "Cheryl, do not leave this parking garage; if you do he's going to ram your car. You'd be a damn idiot if you leave this parking garage; he is going to ram you." At that point, Tremblay telephoned the police.

The defendant presented evidence in his case that he was still in the court house when the incident occurred, and that Tremblay and her mother had misidentified him as the passenger in the car, mistaking him for his son's girl friend. The evidence in the defendant's case also was sufficient to require the jury to consider whether the defendant, if found by them to have been the car's passenger, had any intent to come within one hundred yards of Tremblay. Put differently, the jury, if they rejected the defendant's misidentification claim, had to decide whether the defendant's son was the real perpetrator, with the defendant only passively present in the car and neither directing, nor acquiescing in, his son's conduct.

1. The defendant's trial counsel moved at the close of the Commonwealth's evidence for entry of a required finding of not guilty which the judge denied without argument.[3] The defendant contends that, because he may have been unaware of what his son was doing, his conviction under G. L. c. 209A, § 7, required at least minimal proof that he intended to do the act that resulted

---

[3]The motion for a required finding of not guilty was renewed at the close of the evidence and after the jury returned their verdict.

in the violation, and that the Commonwealth's proof was insufficient to warrant such a finding.[4]

In *Commonwealth* v. *Delaney*, 425 Mass. 587, 595-597 (1997), cert. denied, 118 S. Ct. 714 (1998), we considered the mens rea requirement necessary under G. L. c. 209A, § 7, to prove a criminal violation of a c. 209A order. We rejected the argument made by the defendant that, in order to be convicted of violating a c. 209A order, the Commonwealth was required to show a "manifest intent" on his part to violate the order. *Id.* at 595. We stated that a violation prosecuted under G. L. c. 209A, § 7, "requires no more knowledge than that the defendant knew of the order," and that "[w]e decline to read any additional mens rea requirements into the statute." *Id.* at 596-597. We went on in *Delaney* to discern no error in jury instructions which explained that a defendant may be convicted under G. L. c. 209A, § 7, if it is shown that (1) a c. 209A order had been entered and was in effect when the alleged violation occurred; (2) the defendant knew about the order; and (3) he violated it by abusing the alleged victim. *Id.* at 595. The *Delaney* case sought to make clear that a violation of G. L. c. 209A, prosecuted under § 7, does not require proof that the defendant actually intended to abuse the victim. We were not required in the *Delaney* case to consider the precise point raised in this case concerning a legitimate claim that a third party committed without the defendant's awareness an act which, if the defendant had committed it, would have been a criminal act.

A long-standing common law principle requires that, " 'in the absence of specific words saying so,' it is not supposed 'that the legislature intended to make accidents and mistakes crimes.' *State* v. *Brown*, 38 Kan. 390, 393 (1888)." *Commonwealth* v. *Wallace*, 14 Mass. App. Ct. 358, 364 (1982). This is especially so where the offense in issue calls for a severe penalty, in this case a possible penalty of up to two and one-half years of imprisonment. *Id.*, and cases cited. See 1 W. LaFave & A.W. Scott, Jr., Substantive Criminal Law § 3.5(e), at 314 (1986)

---

[4]This intent requirement constitutes what commonly has been called "general intent." This intent differs from "specific intent" which is defined in terms of a purposeful and focused intention on the part of a defendant to bring about a specific result. As was explained fully in *Commonwealth* v. *Gunter*, *ante* 259, 268-269 (1998), we do not think much is gained by adding the adjectives "general" and "specific" before the word "intent," so we shall forgo doing so here, referring simply to "intent" in terms of the intent in issue.

("Where the definition of a crime requires some forbidden act by the defendant, his bodily movement, to qualify as an act, must be voluntary. To some extent, then, all crimes of affirmative action require something in the way of a mental element — at least an intention to make the bodily movement which constitutes the act which the crime requires." [Footnote omitted.]) In this case, the jury could have found that the defendant was aware of the protective order, but that the Commonwealth failed to prove that he intended that the car take a route that might violate the order. Where the evidence fairly raises an issue as to the defendant's intent either to direct, or acquiesce in, conduct of a third party, there must be proof that the defendant at least intended the act that resulted in the violation. Accordingly, in those comparatively rare situations where a third party is involved in the act that results in the violation, to obtain a conviction under G. L. c. 209A, § 7, the Commonwealth is required to prove beyond a reasonable doubt an intentional act by the defendant which led to the violation of the c. 209A order. We reaffirm the principle enunciated in *Delaney* that, in order to convict a defendant of violating a c. 209A order, the Commonwealth is not required to show that the defendant intended to violate the order.

The Commonwealth's evidence, considered under the governing standard, *Commonwealth* v. *Robicheau*, 421 Mass. 176, 181 (1995), including reasonable and possible inferences that could be drawn by the jury from the circumstantial evidence, *Commonwealth* v. *Gordon*, 407 Mass. 340, 344 (1990), was sufficient to warrant a finding that the defendant had the requisite state of mind. The jury could have found that the defendant knew of the protective order since he was present in the court room when it was entered. Further, the jury could have found that the defendant was a passenger in the car driven by his son; that there were other routes that his son could have taken to avoid encountering Tremblay; that Tremblay had direct eye contact with the defendant as the car driven by his son deliberately approached her from about twenty feet away; and that the car was purposely driven within three feet of her in a threatening manner. From these findings, the jury could have reasonably inferred that the defendant had an intent, or shared intent, to do an act that could result in a violation of the protective order. As a consequence, the jury properly could have found that the defendant had not acted accidentally or through

inadvertence, but had acted in a manner that constituted abuse. The defendant's motion for a required finding of not guilty was properly denied.[5]

2. The judge instructed the jury substantially in accordance with Instruction 5.61 of the Model Jury Instructions for Use in the District Court (1995). This instruction is based on the instruction tacitly approved in *Commonwealth* v. *Delaney, supra* at 595.[6] The judge did not instruct that the defendant had at least to intend to do the act that caused the violation. He was not asked to do so by the defendant's trial counsel, and counsel did not object to the given charge. In light of what we said in the *Delaney* case, we would not expect the jury to have been charged on intent (we also would not expect the defendant's trial counsel to have sought such an instruction or to have objected to the charge). Because the evidence fairly raised a question whether the defendant directed, assented to, or acquiesced in his son's conduct, the jury should have been instructed that the defendant could not be convicted under G. L. c. 209A, § 7, in the absence of an intent on his part to commit the act that resulted in the violation of the protective order. The defendant may have been prejudiced by the absence of the instruction, and, as a result, the conviction must be reversed.[7]

3. The hearsay testimony by Tremblay about what Sandra Smith said to her when Tremblay and her mother were about to leave the parking garage is subject to several objections, not the least of which is its expression of an opinion that lacks any foundation in the evidence. The testimony is not qualified as a

---

[5]In considering the defendant's motion for a required finding of not guilty, we have not considered Tremblay's testimony concerning the statement of Sandra Smith (which was not objected to) warning her not to leave the parking garage because "he is going to ram you." As we will discuss later in this opinion, the testimony was inadmissible hearsay, and is to be excluded at any retrial. In not considering the testimony, we have considered the rule that improper hearsay evidence, which has not been objected to, may be weighed with the other evidence and given evidentiary value, but, in a criminal appeal, any such objectionable evidence will be examined to ascertain whether the jury's consideration of it may have created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Keevan*, 400 Mass. 557, 562 (1987).

[6]The District Court should supplement its present model jury instruction to cover the issue discussed in this case.

[7]Because neither the judge nor the defendant's trial counsel could have anticipated the need for the instruction, we see no need to analyze the case under the standard of a substantial risk of a miscarriage of justice.

proper spontaneous utterance. The testimony is to be excluded at any retrial.

4. The judgment of conviction is reversed, the jury verdict is set aside, and the case is remanded to the District Court for a new trial.

*So ordered.*