COMMONWEALTH *vs.* ANTHONY P. SILVA.

Plymouth. March 7, 2000. - April 11, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, & COWIN, JJ.

*Abuse Prevention. Protective Order. Due Process of Law,* Abuse prevention.

Provisions of a protective order, prohibiting a person from contacting his former wife but allowing him, at certain times, to telephone their children in the wife's custody, was not ambiguous to a person of ordinary intelligence, and a reasonable man in the husband's position could not have understood that, by allowing telephone contact with the children and permissible contact with the former wife incident thereto, the order sanctioned the sort of abusive and threatening language he directed at her when he placed calls to the children. [197-199]

Evidence, at the trial of a complaint charging the defendant, in two counts, of violations of the no-contact provisions of a protective order, was sufficient to warrant the denial of the defendant's motion for required findings of not guilty, and the Commonwealth was not required to prove that the defendant called his former wife's home with the purpose of making impermissible contact with her. [199-200]

At the trial of a complaint in two counts alleging violations of a protective order, the evidence did not warrant any instruction on the issue of the defendant's intent, where he was the actor and where his use of abusive and threatening language was intentional and in no sense involuntary or accidental. [200]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on November 25, 1997.

The case was tried before *Richard D. Savignano,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Paul M. Freitas* for the defendant.

*Gail M. McKenna,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. A jury in the District Court convicted the defendant on two counts of a complaint charging him with violations, on separate dates, of the no-contact provisions of a protective order. See G. L. c. 209A, § 7. The Appeals Court, in

an unpublished memorandum and order pursuant to its rule 1:28, affirmed the convictions. *Commonwealth* v. *Silva*, 48 Mass. App. Ct. 1101 (1999). We granted the defendant's application for further appellate review. We reject the defendant's arguments that he was entitled to required findings of not guilty. We also reject his contention that he should have a new trial because the jury were not instructed about his actual intent when he made contact with his former wife. Accordingly, we affirm the convictions.

The evidence, considered in the light most favorable to the Commonwealth, warranted the jury in finding the following facts. The defendant and his former wife were married for eleven years. Their marriage ended in a bitter divorce in April, 1997, and the defendant's former wife was awarded custody of their four young children. In October, 1996, after a full hearing in the presence of the defendant, a judge in the Probate and Family Court granted the defendant's former wife a thirteen-month extension of a previously entered G. L. c. 209A protective order. Under its terms, which were in effect at the time of his alleged violations, the defendant was ordered "not to contact [his former wife], except as permitted in [paragraphs] 8 & 13 below . . . either in person, by telephone, in writing or otherwise, either directly or through someone else, and to stay at least 50 yards from [his former wife] even if [she] seems to allow or request contact." Paragraph 8 provided that the defendant could "visit with the children once per week on either Saturday or Sunday," and paragraph 13 provided that the defendant was "allowed to telephone the children *only* between the hours of 3:00 p.m. until 6:30 p.m. and at any time on the weekend before 7:00 p.m." (emphasis original). The order further stated that the defendant "shall not discuss the court proceedings with the children, [and] . . . shall not question the children about their mother or their mother's activities."

On November 3, 1997, at about 5:30 P.M., the defendant made a telephone call to the home of his former wife, who answered the telephone and asked him what he wanted. The defendant told her that he wanted to know "what the f was going on." She again asked him what he wanted, because he had not made telephone calls to speak with the children in four months. The defendant responded that he wanted to speak with his older daughter. (The daughter's whereabouts had been the subject of a recent police visit to the defendant. Apparently, she had fought

with her mother a few days earlier, and left, stating she was going to go see her father. The defendant's former wife had then called the police.) His former wife refused his request, stating that, "you didn't want to talk to the other kids, you're not talking to just one and not the others." At this point, the defendant told his former wife, "I'm sick of you. You f'in bitch. I will get you. You're gonna pay." According to his former wife, the defendant was "yelling and screaming" and sounded "very angry." She hung up the telephone. This conversation constituted the basis of the first count in the complaint.

On November 11, 1997, at about 5:30 P.M., the defendant again made a telephone call to the home of his former wife. This time, his oldest daughter answered, said, "Oh hi Dad," and handed the telephone to her mother. The defendant's former wife testified that she asked him what he wanted, and he said that, "he wanted to know what the f was going on. Why the f'in police were at his door. He was very angry and yelling at me . . . . He said he was going to get me. He was going to make me pay." His former wife told the defendant to "take [her] to court." After all four children had spoken with the defendant, the younger daughter handed the telephone back to her mother, who told the defendant not to call anymore. The defendant responded that "he'd call any f'in time he want[ed]." The defendant's former wife ended the conversation, and she reported the call to the police. At the suggestion of the police, she then wrote out a statement that she delivered to the police department. This conversation constituted the basis of the second count of the complaint.

On Friday, November 21, 1997, the day that the protective order was due to expire, a hearing was held in the Probate and Family Court. At the hearing, at which both the defendant and his former wife were present, a judge vacated the protective order. That same day, the defendant's former wife went to a District Court and, without disclosing to the District Court judge that a judge in the Probate and Family Court had just vacated another order, obtained an emergency protective order against the defendant. The following Monday morning, November 24, 1997, the defendant went to the District Court and succeeded in having a judge there vacate this order. That afternoon, the defendant made a telephone call to his former wife, who testified that he sounded "happy that he had [the order] vacated." He went on to tell her that, "[the order] was

against his civil rights and it was just a matter of time before he got his guns back[1] and that he would get [her]." That evening, "afraid that [the defendant] would get his guns back and that he would come to [her] house and kill [her]," the defendant's former wife reported the defendant's threats to the police,[2] and her report resulted in a third protective order being issued by a judge in the Probate and Family Court. The defendant was arrested the next day, at the court house, after appearing at a hearing concerning this order.

1. Represented by new counsel on appeal, the defendant claims that the judge erred in denying his motion for required findings of not guilty because (a) the terms of the abuse prevention order were ambiguous and placed him in the impossible position of being unable to comply strictly with the court's mandate; and (b) there was insufficient evidence to support findings by the jury that the defendant intended to telephone the family home with the purpose of impermissibly making contact with his former wife.

(a) The defendant argues that he could not realistically comply with the no-contact provisions of the order because the order specifically allowed him to make contact with his former wife's home during certain time periods to talk with his children, thus making it inevitable that he would, at times, speak with his former wife. The defendant further maintains that the terms of the order were ambiguous because they failed to include clear instructions to guide him in this situation, and because they failed to warn him that he risked violating the order if he spoke with his former wife while trying to reach his children. Based on these arguments, the defendant concludes that due process considerations necessitated the entry of required findings of not guilty.

A protective order of this sort raises practical difficulties. As has been stated, the order was entered after a hearing in the Probate and Family Court in which the defendant participated. We do not have a record of that hearing, so we do not know what alternatives may have been considered by the probate

---

[1] Paragraph 12 of the abuse prevention order required the defendant to surrender all guns, ammunition, gun licenses, and firearm identification cards to the police.

[2] This conversation appears to have been the basis of a third charge against the defendant of threatening to commit a crime. See G. L. c. 275, § 2. The jury acquitted him of this charge.

judge to permit the defendant to speak by telephone to his children in a way which avoided, or minimized, improper contact with his former wife. The order, as entered, may have posed a matter of necessity in the circumstances, and the order called on the parties to use restraint in complying with it. Attentiveness to civility, however, is easier to talk about in the abstract than to expect from two people who, in the aftermath of a difficult divorce, harbor bitterness and anger toward each other. Protective orders, by their nature, are often entered under pressure, in the midst of volatile feelings between the parties and the likelihood of threatened injury directed by the restrained party at the protected party. Judges are required to fashion restrictions that, to the extent possible, balance and safeguard the conflicting rights of the litigants. Perfection cannot be frequently achieved. We look only for orders that will protect the applicant for the order, will be reasonably practical to administer, and will accommodate such rights of the restrained party that the judge determines are worthy of accommodation and recognition.

A no-contact order like this one would not be violated when a father has to speak on the telephone with a protected woman, in order to speak with his children, and he does so briefly, and in a direct and nonabusive way. Such contact would be a lawful incident of the order because there may be no other way for the father to exercise his right to reach his children.[3] This brief and inevitable contact, however, cannot be used as an occasion to harass, threaten, or intimidate the protected party. That form of conduct crosses the line between lawful incidental conversation, permitted by the order, and a substantive violation of its terms.

The line was crossed in this case. The order prohibited the defendant from making contact with his former wife, either "in person, by telephone, in writing or otherwise, either directly or through someone else, and to stay at least 50 yards from [his former wife] even if [she] seems to allow or request contact." The order was not ambiguous to a person of ordinary intelligence. A reasonable man, in the defendant's position, could

---

[3]Hanging up the telephone, when a protected woman answers, is not an appropriate solution. Abandonment of permissible attempts to speak with one's children in this way is not required by the order, and repetitive hang-up telephone calls might provide a ground for extending the order, see *Pike* v. *Maguire*, 47 Mass. App. Ct. 929 (1999); a charge of violating the no-contact provision of the order, see *Commonwealth* v. *Butler*, 40 Mass. App. Ct. 906, 907 (1996); or a charge of harassment, see G. L. c. 269, § 14A.

not have believed that paragraph 13 of the order, allowing telephone contact with his children, would have sanctioned the angry outbursts that occurred here. See *Commonwealth* v. *Butler*, 40 Mass. App. Ct. 906, 907 (1996). The evidence was susceptible only of the conclusion that the defendant understood that his behavior violated the terms of the order, because, on being asked not to call anymore, the defendant told his former wife that he would call "any f'in time he want[ed]."

The defendant thus violated the order when he went beyond permissible incidental contact by using abusive and threatening language directed at his former wife. The violation was not, in any sense, unavoidable. When his former wife refused to let the defendant speak with his daughter, his most obvious option was to respond calmly, without oaths or threats, that he had a right to do so. Further, the defendant could have properly brought any grievance about his former wife's alleged interference with his rights to the attention of the court that had entered the order.[4] He consciously chose instead to pursue hostile and intimidating conversations with his former wife, in violation of the order's purpose, to prevent exactly the sort of behavior that occurred here. The defendant's convictions did not violate his rights to due process.

(b) The defendant claims that there was insufficient evidence to support findings by the jury that he called his former wife's home with the purpose of impermissibly making contact with her. The evidence warranted the jury in finding, beyond a reasonable doubt, that (1) there was an abuse prevention order in effect; (2) the defendant knew of the terms of the order; and (3) he violated the provision of the order which prohibited certain contact, by engaging in impermissible conversations, replete with abusive language directed at his former wife, on two separate occasions. See *Commonwealth* v. *Butler*, *supra*. Proof that the defendant had an unlawful purpose in placing his telephone calls was not necessary. See *Commonwealth* v. *Delaney*, 425 Mass. 587, 596-597 (1997), cert. denied, 522 U.S. 1058 (1998). The motion for required findings of not guilty

---

[4]As required, the protective order stated that, "[f]or good cause, either the Plaintiff or the Defendant may request [the] Court to modify this Order before its scheduled expiration date." See *Commonwealth* v. *Laskowski*, 40 Mass. App. Ct. 480, 482-483 (1996).

based on the sufficiency of the Commonwealth's evidence was properly denied.[5]

2. For the first time on appeal, the defendant asserts that, because his contacts with his former wife were caused by the conduct of others (his former wife's refusal to allow him to speak with his older daughter, and his daughter's handing the telephone to her mother), the judge erred in failing to instruct the jury that they must find that the defendant had a specific intent to violate the order by making contact with his former wife. This argument lacks merit.

In *Commonwealth* v. *Collier*, 427 Mass. 385, 389 (1998), we held that, in a rare case, where a legitimate issue is raised indicating that a person other than the defendant may have committed the act alleged to constitute the violation of the order, the Commonwealth must prove, beyond a reasonable doubt, that the violation was an intentional act by the defendant, and a jury instruction on the point would be needed. (The *Collier* case involved an alleged violation of an abuse prevention order, which prohibited the defendant from coming within one hundred yards of his former wife, which occurred while the defendant was a passenger in an automobile driven by his son. See *id.* at 386-387.) In the *Collier* decision, we reaffirmed the rule enunciated in *Commonwealth* v. *Delaney, supra,* that, to obtain a conviction, the Commonwealth is not required to prove that the defendant actually intended to violate the order, but only to prove that the act constituting the violation was voluntary. See *Commonwealth* v. *Collier, supra* at 389. It is beyond question that the defendant's use of abusive and threatening language was intentional, and in no sense either involuntary or accidental. A jury instruction on the issue of intent was unnecessary.

*Judgments affirmed.*

---

[5]We reject the defendant's further claim that the evidence is insufficient because it equally supports two mutually exclusive propositions.