Commonwealth v. Mendonca.

## COMMONWEALTH vs. JOHN MENDONCA.

No. 99-P-819.

Middlesex. June 13, 2000. - January 8, 2001.

Present: JACOBS, PORADA, & GELINAS, JJ.

*Protective Order. Practice, Criminal,* Required finding, Waiver of trial by jury.
   *Words,* "No contact."

This court concluded that violation of a "no contact" order issued pursuant to
   G. L. c. 209A was established by proof of the defendant's unexcused
   conversation with a protected party over the telephone, and proof that the
   protected party was placed in fear was not necessary. [685-688]
Evidence at the trial of complaints alleging violations of a protective order
   was sufficient to support the conclusion that the defendant had been served
   with a copy of the order and had actual knowledge of its terms. [688-689]
The record of a judge's jury waiver colloquy with a criminal defendant,
   together with the waiver form signed by the defendant and the certification
   on that form signed by defense counsel, demonstrated a sufficient basis for
   the judge's acceptance of the defendant's waiver of trial by jury. [690-691]

COMPLAINTS received and sworn to in the Lowell Division of
the District Court Department on June 25 and July 8, 1998,
respectively.

The cases were heard by *Patricia G. Curtin,* J.

*Stella Robinson* for the defendant.

*Amy E. Bannes,* Assistant District Attorney, for the
Commonwealth.

JACOBS, J. Convicted after a bench trial in the Lowell District
Court of two counts of violating a G. L. c. 209A protective
order,[1] the defendant claims the Commonwealth failed to prove

---

[1]In pertinent part, G. L. c. 209A, § 3, provides: "A person suffering from
abuse from an adult or minor family or household member may file a
complaint in the court requesting protection from such abuse, including, but
not limited to, the following orders:

"(a) ordering the defendant to refrain from abusing the plaintiff, whether
the defendant is an adult or minor;

that the protected party (Shirley) was put in fear of imminent serious physical harm as a result of telephone calls he made to her. He also argues that the Commonwealth did not prove he knew of the existence of the order, that the evidence was insufficient to show he called Shirley on a date charged, and that the jury waiver colloquy conducted by the judge was inadequate. We affirm the convictions.

1. *Background.* Shirley and the defendant lived together for over twenty years. In November of 1997, Shirley obtained a G. L. c. 209A abuse prevention order in the District Court, which included orders that the defendant not "abuse" or "contact" Shirley. The defendant subsequently was confined at the Bridgewater State Hospital, and remained there during the time when the calls at issue were made from February through June, 1998.[2] Shirley testified the calls were made on a collect basis to her in Lowell,[3] and that on many occasions the defendant asked to speak to his grandchildren or wanted to know about his mother and family. She stated he was defiant and threatening when told he should not be calling. She testified to his threats to "chop . . . up [her boyfriend] in three pieces or have it done," and to kill her daughter. She acknowledged that she was not fearful during these phone calls because she felt safe knowing "he couldn't get away" from his confinement. When the defendant was released in June of 1998, Shirley contacted the police. As a result, the defendant was arrested and charged with violations of the c. 209A order. The judge found the defendant guilty of two violations on the basis of telephone calls made to Shirley on February 18 and June 14, 1998.[4]

2. *The telephone calls.* With misplaced reliance on *Commonwealth* v. *Gordon*, 407 Mass. 340 (1990), and *Com-*

---

"(*b*) ordering the defendant to refrain from contacting the plaintiff, unless authorized by the court, whether the defendant is an adult or minor."

[2]The reason for this confinement does not appear in the record.

[3]The telephone was listed in the defendant's name, and Shirley paid the telephone bills at his direction and with money from his bank account.

[4]Although the complaints against the defendant charged failure to comply with several orders, including "no abuse" and "no contact" directives, the prosecutor told the judge that the "Commonwealth is not alleging that the defendant violated the no abuse provisions. What we're alleging is that he violated the provision which orders him not [to] contact the plaintiff."

*monwealth* v. *Collier*, 427 Mass. 385 (1998),[5] the defendant argues that the prosecution was required to prove that Shirley was put in fear of imminent serious physical harm in order to convict him. Pointing to Shirley's uncontroverted testimony that she was not fearful at the time of the telephone calls, he asserts that there was no "abuse" and, therefore, "no rationale for criminalizing the [telephone] contact." This argument would be persuasive if the defendant had been convicted of violating a "no abuse" order granted under G. L. c. 209A, § 3(*a*) (see note 1, *supra*). Such a conviction would require, just as does the issuance of a protective order, evidence of abuse as defined in G. L. c. 209A, § 1.[6] Here, however, the principal issue at trial was whether the defendant violated a "no contact" order (see note 4, *supra*).

Since 1990,[7] c. 209A, § 3(*b*), has provided that a person suffering from abuse may obtain an order requiring the defendant "to refrain from contacting the plaintiff, unless authorized by the court." Chapter 209A, § 7, was also amended in 1990 to

[5]These cases have no application in the present case. *Commonwealth* v. *Gordon*, 407 Mass. 340 (1990), interprets G. L. c. 209A, §§ 3 and 7, before those sections were amended by St. 1990, c. 403, §§ 3 and 8. The defendant in that case was ordered to refrain from abusing the plaintiff and to vacate and remain away from the marital home. The court concluded the evidence was sufficient to withstand the defendant's motion for a required finding of not guilty for violation of the order to vacate, *id.* at 348, and that, from the evidence of his acts when he appeared at the marital home, the jury could conclude that the plaintiff "entertained a reasonable apprehension" of physical abuse (as defined in § 1). *Id.* at 350. In *Commonwealth* v. *Collier*, 427 Mass. 385 (1998), the defendant was convicted of violating a protective order by coming within one hundred yards of the plaintiff and of placing her in fear of imminent serious physical harm. *Id.* at 386 & n.1. A car driven by his son, in which he was a passenger, came within three feet of the plaintiff, and the case turned on whether the jury properly were instructed that the defendant intended an act which resulted in a violation of the order. *Id.* at 389-390.

[6]"Abuse" is defined in c. 209A, § 1, as "the occurrence of one or more of the following acts between family or household members:

"(*a*) attempting to cause or causing physical harm;

"(*b*) placing another in fear of imminent serious physical harm;

"(*c*) causing another to engage involuntarily in sexual relations by force, threat or duress."

The issuance of a c. 209A order is a civil procedure, and abuse need only be proved by a preponderance of the evidence. See *Jordan* v. *Clerk of the Westfield Div. of the Dist. Ct. Dept.*, 425 Mass. 1016, 1017 (1997).

[7]Statutes 1990, c. 403, § 3, amended c. 209A, § 3, to add "refrain from contacting" and "remain away" provisions.

provide that the violation of a "no contact" order is punishable as a criminal offense. St. 1990, c. 403, § 8. In this case, the "no contact" order did not contain an exception for telephone calls and, in fact, ordered the defendant "not to contact [Shirley] . . . either in person, [or] by telephone." Accordingly, the Commonwealth was not required to produce evidence of "abuse." Proof of contact by telephone was sufficient.[8,9] See *Commonwealth* v. *Russell*, 46 Mass. App. Ct. 307, 309-310 (1999). "No contact" orders, although permitted by statute, would be superfluous to "no abuse" orders under G. L. c. 209A, § 3(*a*), if not enforceable except by proof of abuse. "Our construction of the statute must be made 'upon the whole statute, [so] that no clause, sentence or word shall prove superfluous, void or insignificant, if, by any other construction they may all be made useful and pertinent.' " *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dept. of Community Affairs*, 363 Mass. 339, 364 (1973), quoting from *Commonwealth* v. *McCaughey*, 9 Gray 296, 297 (1857).

"Our cases generally interpret 'contact' broadly." *Commonwealth* v. *Basile*, 47 Mass. App. Ct. 918, 919 (1999), and cases cited. Contact by telephone falls "within the prohibited circle." *Commonwealth* v. *Butler*, 40 Mass. App. Ct. 906, 907 (1996). See *Commonwealth* v. *Russell*, 46 Mass. App. Ct. at 309-310 (evidence of unaccepted collect calls from the incarcerated defendant to his wife together with a call to his wife from a third person enlisted by defendant sufficient to establish violation of "no contact" order). Because a determination of past abuse is a prerequisite to obtaining a protective "no contact" order, and the purpose of such an order is the prevention of the manifest reactive harm created by contact from an abuser, *Commonwealth* v. *Thompson*, 45 Mass. App. Ct. 523, 525 (1998),

---

[8]We recognize, as was indicated in *Commonwealth* v. *Silva*, 431 Mass. 194, 197 (2000), that no contact provisions may raise practical difficulties where it may be necessary for a defendant to have incidental conversation with a protected party in order to have permitted contacts with others. The defendant has made no argument in this appeal that his conversations with Shirley were incidental to his exercise of any rights. In any event, whatever the defendant's rights may have been to obtain information about his family or to speak to his grandchildren, his threats and verbal abuse transformed any incidental contact into a "substantive violation" of the terms of the order. *Id.* at 198-199. In the circumstances of an outstanding "no contact" order, a defendant properly must bear the consequences of proven unnecessary and nonincidental contact.

[9]The defendant does not argue that Shirley's acceptance of his calls excused his violation of the "no contact" order.

we hold that violation of an order not to contact by telephone is established by proof of unexcused conversation with a protected party over the telephone and without proof that the protected party was placed in fear.

3. *Motion for required finding of not guilty.* Claiming the evidence was insufficient to show he had actual or constructive knowledge of the terms of the c. 209A order, the defendant argues his motion for a required finding of not guilty should have been allowed. The defendant was recorded as being in attendance in the District Court when the order was obtained on November 7, 1997, but was not present on the three occasions it later was extended.[10] While there is no evidence that the defendant was informed of the terms of the order at the time it was issued, the return of service portion of the order indicated that he subsequently had been served with a copy of the original order.[11] A showing of service is "strong evidence" of a defendant's knowledge of the conduct prohibited by a protective order. *Commonwealth* v. *Delaney,* 425 Mass. 587, 592-593 (1997), cert. denied, 522 U.S. 1058 (1998).

Even if we assume a failure of service, the evidence was sufficient to show the defendant had actual knowledge of the order's terms. Shirley testified she told the defendant "a few times" that he was not supposed to call, and he responded that he "didn't believe" in restraining orders and said "to hell with them." See *Commonwealth* v. *Silva,* 431 Mass. 194, 199 (2000). Her daughter essentially corroborated this testimony. Viewed under the standard of *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979), the evidence was sufficient to show the defendant had the requisite knowledge of the order and its terms.

The defendant also argues there was insufficient evidence to support the second offense, the telephone call on June 14, 1998.

---

[10]The defendant does not claim he was unaware of the extensions.

[11]The return of service section of the order shows that the defendant was served a faxed copy by an officer at "Cambridge Jail" on November 8, 1997. At trial, the Lowell police detective who arrested the defendant testified that, in applying for a complaint, he verified the order through the local police dispatcher, and had examined the return of service certification, but had no independent knowledge that the order had been served on the defendant. There was testimony from the defendant that could be viewed as supporting his contention at argument on the motion for a required finding of not guilty that on November 8, 1997, he was not in Cambridge, but in Bridgewater. That testimony does not compel a required finding of not guilty.

He ignores a telephone record, admitted in evidence at trial, which shows that a collect call was made on that date from Bridgewater, where the defendant then was incarcerated. Shirley testified generally, moreover, that the defendant had made telephone calls during the month of June, and that he called "[a]bout every day."

4. *Jury waiver.* The defendant argues that a colloquy that was conducted by the judge after the start of the trial[12] failed to explain the nature of the waiver of trial by jury. He asserts that his "verbal and cultural illiteracy, his lack of education, his psychiatric history, and his poor English, all militate against a finding, based on this colloquy, that his waiver was intelligent and voluntary." The record shows otherwise.

The court utilized an interpreter during the colloquy although the defendant initially appeared to understand the judge and responded to his questions in English. Sixty-two years old at trial, he claimed he had lived in the United States for forty years, but had not gone to school. While the judge seems otherwise to have followed in substance a model colloquy cited with approval in our decisions,[13] she omitted asking whether the defendant understood he had a constitutional right to a trial by jury, and did not describe the jury as consisting of members of the community, or indicate that he could participate in their selection, or that the jury's verdict must be reached unanimously. The defendant answered "yes" to the question whether he understood he was giving up his right to be tried by a jury. Also, the judge obtained the defendant's acknowledgment that he had talked with defense counsel about whether he should

---

[12]During Shirley's direct testimony, the judge apparently discovered that no colloquy on jury waiver had been conducted with the defendant. After a recess of unspecified length, the judge asked defense counsel whether he had talked to the defendant, and counsel responded he had gone through the "paper work with him for maybe the fourth time with the aid of the interpreter," and stated the defendant had executed a waiver form. The judge then conducted the colloquy.

The statement in *Commonwealth* v. *Pavao*, 423 Mass. 798, 803 (1996), that "[a] postconviction colloquy would be ineffective to remedy the omission of the colloquy at the time of waiver," is inapplicable in this case. Analogously, in *Commonwealth* v. *Collado*, 426 Mass. 675, 678 (1998), the acceptance of a waiver after jury empanelment was a procedural violation which did not require reversal. In any event, the defendant did not raise this issue below, and defense counsel participated in the waiver procedure and the colloquy.

[13]See *Commonwealth* v. *Towers*, 35 Mass. App. Ct. 557, 560 n.4 (1993); *Commonwealth* v. *Onouha*, 46 Mass. App. Ct. 904, 905 (1998).

give up the right to a jury trial, that he was satisfied with the advice given him by defense counsel, and that he still wanted to give up that right.

The colloquy here appears as adequate as that in *Commonwealth* v. *Hernandez*, 42 Mass. App. Ct. 780, 783-784 (1997), where the judge did not state the constitutional right to a jury trial, and omitted describing the jury as members of the community, or that they must be unanimous in their verdict. There, it was held the judge might rely on the information contained in the jury waiver form and defense counsel's certificate. *Id.* at 785. A similar form filed with the court in this case contains the information which the judge in *Hernandez* and in the present case did not state explicitly. See *id.* at 782-783. In the circumstances, defense counsel's certification and the colloquy indicate the defendant had the requisite "comprehension of the nature of the choice" between a bench and jury trial. *Commonwealth* v. *Schofield*, 391 Mass. 772, 776 (1984), quoting from *Ciummei* v. *Commonwealth*, 378 Mass. 504, 510 (1979). The *Schofield* court, *supra* at 775, also stated that "[w]e did not intend to establish a rule that . . . the defendant [must be] aware of all the differences between bench and jury trials mentioned in *Ciummei*."

The defendant does not claim that he was uninformed or misinformed by defense counsel, or that he was pressured or under any disability at the time of the colloquy. See *Commonwealth* v. *Onouha*, 46 Mass. App. Ct. 904, 905 (1998).[14] His illiteracy and language arguments are undercut by his testimony and the court's use of an interpreter.[15] We conclude that the colloquy, together with the waiver form signed by the defendant and the certification on that form, signed by defense counsel,

---

[14]There is no merit in the defendant's further assertion that his waiver was invalid because it was not executed at the same time as the colloquy. The record does not clearly show when the form, dated the same date as the trial, was executed, but it appears to have been signed before the colloquy. The procedure for submission of the form described in *Commonwealth* v. *Hernandez*, 42 Mass. App. Ct. at 781-782, does not specify when the form is to be executed. In any event, a colloquy is to be conducted " 'contemporaneously with and before *accepting* any waiver' of the right to trial by jury" (emphasis added). *Commonwealth* v. *Hardy*, 427 Mass. 379, 381 (1998), quoting from *Commonwealth* v. *Abreu*, 391 Mass. 777, 778 (1984).

[15]Aside from his occasional use of English in responding to the judge's questions, the defendant's testimony that "[i]n my country there are no restraining orders like this. I've never seen anything like this," hardly is indicative of a lack of understanding of the legal process he faced.

provided sufficient basis for the judge's acceptance of the defendant's waiver of trial by jury.

*Judgments affirmed.*