COMMONWEALTH *vs.* HAROLD STEWART.

No. 99-P-1975.

Norfolk. April 9, 2001. - October 9, 2001.

Present: GREENBERG, DUFFLY, & COWIN, JJ.

*Protective Order. Abuse Prevention. Due Process of Law,* Abuse prevention. *Practice, Criminal,* Instructions to jury. *Evidence,* Prior misconduct.

At the trial of a complaint alleging violation of a protective order, in which the protective order prohibited the defendant from coming within fifty yards of his former wife, but allowed him an exception for the limited purpose of driving up to his wife's apartment building to pick up and drop off his children, the evidence was sufficient for the jury to find that the defendant, by failing to remain in his motor vehicle while dropping off his son, entered his former wife's protective zone in violation of the express prohibition of the fifty foot stay away provision: consequently, the judge's instructions to the jury, which allowed the jury to find the defendant guilty based on the defendant's merely exiting his motor vehicle, did not create a substantial risk of a miscarriage of justice. [757-760]

A criminal defendant's conduct, expressly prohibited by a protective order issued pursuant to G. L. c. 209A, was not, in the circumstances, excusable as a lawful incidental contact. [760-762]

At the trial of a complaint alleging violation of a protective order, the testimony of the defendant's former wife concerning the defendant's prior bad acts, even if improperly admitted, did not prejudice the defense. [762-764]

COMPLAINT received and sworn to in the Quincy Division of the District Court Department on May 8, 1997.

The case was tried before *Joseph R. Welch,* J.

*Alan D. Campbell* for the defendant.

*Tracey A. Cusick,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. Harold Stewart, the defendant, concedes that when he returned his son to his former wife's residence after visiting with him, he left his motor vehicle to accompany the child inside the foyer of the former wife's building. The ques-

tion the defendant raises on appeal is whether, under the circumstances, that conduct amounted to a statutory violation of G. L. c. 209A. He also argues that the prosecutor's direct examination of his former wife on the subject of previous 209A violations was inconsistent with *Commonwealth* v. *Triplett*, 398 Mass. 561, 562-563 (1986) (substantial miscarriage of justice to admit evidence of prior misconduct for purposes of showing bad character).

These, in outline, are the facts the jury could have found. The defendant and his former wife were married in 1983. Two sons resulted from their union: John was born in 1989, and Derek was born in 1991. By 1993, the marriage began to unravel. That year, the defendant was in an automobile accident disabling him from regular employment. He subsisted on Social Security disability benefits, and his former wife, in addition to caring for the children, worked outside of the home. By 1995, the defendant was under a psychologist's care and decided to leave the household. With his former wife's consent, he visited the children while she was at work. The arrangement broke down in the early part of August of 1995, prompting the former wife to obtain a temporary protective order from the District Court that prohibited the defendant from coming within one hundred yards of her. When that order expired on August 31, she applied for another protective order in the Probate and Family Court. On September 27, 1995, after a full hearing in the presence of the defendant, a Probate Court judge granted the former wife a second (and superseding) protective order prohibiting the defendant from coming within fifty yards of her person and ordering him not to stalk her. The judge gave her temporary custody of the children and the defendant was granted the right to take the children from the household for unsupervised visits. That order, with two subsequent modifications, was extended to November 22, 1996. On November 26, 1996, the Probate Court entered a permanent order against the defendant. Under the terms in effect at the time of the alleged violation, the defendant was to "remain in his vehicle at all times" during visitation pick up and drop off.

In 1997, defendant's former wife, with the two children, lived in a basement apartment located in a multi-unit apartment

building in Weymouth. At the entrance of the building, about fifteen feet from the driveway, was an unlocked front entrance. Inside was a foyer containing the occupants' mailboxes and a buzzer system to signal individual residents that visitors in the foyer sought entry. An electronic lock controlled a glass interior door that opened to a stairway leading to the wife's apartment.

On April 12, 1997, at about 3:30 P.M., the defendant drove to the apartment building to pick up the children for a Saturday visit. He honked his horn, and the youngest child, Derek, came out and entered the defendant's vehicle.[1] At about 6:30 P.M. the defendant drove Derek back to the apartment. Besides his son, a female acquaintance rode along with him. The defendant's former wife, who was inside, saw and heard his car drive up. At that point, the defendant sounded his horn; there was no response. His female companion was disabled and unable to escort Derek inside the building. The defendant's former wife testified that the next thing she recalled was one of the children saying, "Daddy's inside the building again." Opening her apartment door, she peered out and saw the defendant moving through the inside foyer door that she had "buzzed" open. She was uncertain whether the defendant started to descend the staircase leading to the entrance to the apartment. Derek then ran inside the apartment, and she shut the door. She placed a telephone call to the Weymouth police.

Officer Francis Beatrice, who was working a 4:00 P.M. to midnight shift, responded to a call from his dispatcher and drove to the apartment building. It took him only three minutes, but the defendant was already gone. Beatrice spoke with the defendant's former wife and confirmed the existence of the G. L. c. 209A protective order and sought a criminal complaint based upon information she had provided.

1. The defendant contends that, "contrary to law," because he only "technically" violated the order by chaperoning his son into the foyer of the apartment building, the judge erred in instructing the jury, among other things, that a conviction could

---

[1] In her testimony, the defendant's former wife had a vague recollection that both children were picked up by the defendant for a visit. The defendant's testimony was that the oldest child was sick and unable to leave the apartment with his brother.

be based on his not remaining in his vehicle. He correctly argues that only the no contact and stay away restrictions of the protective order, if violated, may be prosecuted as crimes under the statute. See *Commonwealth* v. *Delaney*, 425 Mass. 587, 596 (1997), cert. denied, 522 U.S. 1058 (1998), citing G. L. c. 209A, § 7.[2] However, he claims that the instructions improperly conveyed to the jury that merely getting out of the car may suffice to satisfy the requirements of the no contact order. This was erroneous, he argues, because the no contact provision in G. L. c. 209A requires proof beyond the fact that he left his car to return his son. No objection was made by the defendant's trial counsel to the instructions. We examine the defendant's contentions to ascertain whether anything was stated (or left unstated) in the instructions that would create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Bowler*, 407 Mass. 304, 305 (1990).

We agree with the defendant that his conviction may have been based on his leaving the car, an act which, in and of itself, could not constitute a statutory violation. A jury verdict must be unanimous, and when the Commonwealth introduces at trial, as it did here, evidence of alternative discrete incidents that could support the charge against the defendant, the jury must unanimously agree on which specific act constitutes the offense charged. See *Commonwealth* v. *Conefrey*, 420 Mass. 508, 511-515 (1995). The instruction was wrong because a criminal violation of the "stay away" and "no contact" provisions requires some proof beyond the fact that the defendant momentarily left his car to return his children. However, the defendant failed to request a specific unanimity instruction, which would have informed the jury that they must be unanimous as to which specific act constitutes the offense charged. See *Commonwealth* v. *Grandison*, 433 Mass. 135, 145 n.19 (2001). We do not think, however, that the flawed instruction created a substantial miscarriage of justice. *Commonwealth* v. *Lewis*, 48 Mass. App. Ct. 343, 350 (1999).

---

[2]In *Commonwealth* v. *Delaney, supra,* the Supreme Judicial Court held that only the offenses expressly set forth in G. L. c. 209A, § 7, constituted criminal violations of the statute. In contrast, any other violation of a c. 209A order must be prosecuted as a criminal contempt. *Ibid.*

In this case, the defendant concededly failed to "stay at least fifty yards away from [the protected party]" when he exited the car, walked into the former wife's apartment complex, and stood within four or five yards of her door. The visitation stipulation implied an exception to the stay away provision for the limited purpose of driving up to the curb to drop off and pick up the children. In other words, the defendant was allowed to pierce the former wife's fifty foot zone of protection as long as he approached in and remained inside a vehicle. The vehicle represented a second zone of protection, this time in favor of the defendant. As long as he remained inside, he was protected from criminal liability even though the curb was within fifty feet of the protected party's apartment. The defendant exposed himself to criminal liability when he left this protective bubble *not* because he failed to remain in the car, but because by doing so, he automatically entered the former wife's protective zone in violation of the fifty foot stay away provision. The evidence was sufficient for the jury to find that the defendant violated the "stay away" provision. In the final analysis, violation of a G. L. c. 209A order's stay away provisions are properly prosecuted as statutory offenses. See *Commonwealth* v. *Gordon*, 407 Mass. 340, 347-348 (1990); *Commonwealth* v. *Delaney*, 425 Mass. at 596. The Commonwealth must prove the existence of a valid 209A order, that the defendant knew of the order, and that the defendant violated it. See *Commonwealth* v. *Rauseo*, 50 Mass. App. Ct. 699, 705 (2001). While a defendant's clear intent to disobey a restraining order in circumstances in which he was able to obey it is an element of a criminal contempt action, it is not an element of the statutory violation of an abuse prevention restraining order. See *Commonwealth* v. *Rauseo, supra,* citing *Commonwealth* v. *Delaney*, 425 Mass. at 596-597; *Commonwealth* v. *Collier*, 427 Mass. 385, 387-388 & n.4 (1998). Here, the defendant does not contest that he knew of the no contact order and that he came within fifty feet of the protected party.

Likewise, in the *Rauseo* case, 50 Mass. App. Ct. at 701, a modification to a 209A order allowed the defendant to have supervised visitation with his child, which was to be coordinated by the defendant's parents. We said that the modification merely

"lessened to some degree the restrictions on the defendant's behavior, but kept in place orders prohibiting the defendant from abusing the wife and from having in-person contact with her, and requiring that the defendant stay away from the wife's residence and workplace." *Ibid.*

2. As already indicated, the defendant admits to a "technical" violation of the order. He proposes a second argument based upon his testimony at trial that his former wife's delay in coming out to retrieve their son necessitated his leaving the car. On the whole, a jury could well find that he violated the order either as soon as he left the car to return his son or as late as when his former wife opened her door and saw him in the foyer. He contends that this contact was nonetheless lawful, because there was no other way to return his son safely.

A similar argument was made and rejected in *Commonwealth v. Silva*, 431 Mass. 194 (2000). There the Supreme Judicial Court held that provisions of a protective order prohibiting a husband from contacting his former wife but allowing him, at certain times, to telephone his children were not so ambiguous as to prevent prosecution under the statute. Although the telephone calls had been made during permitted times, the court found that the defendant's angry statements to his former wife during the calls were sufficient to constitute a statutory violation. The *Silva* court said that "[a] no-contact order like this one would not be violated when a father has to speak on the telephone with a protected woman, in order to speak with his children, and he does so briefly, and in a direct and nonabusive way. Such contact would be a *lawful incident* of the order because there may be no other way for the father to exercise the right to reach his children." *Id.* at 198 (emphasis added). By analogy, the defendant here posits that leaving his vehicle to walk his six year old boy to his home does not cross the line, described in *Silva*, between lawful incidental conduct and a violation of the no contact order.

The argument has surface appeal, especially when one considers that the Commonwealth's proof in this case did not show abusive or violent behavior when the defendant returned to the apartment to accompany his son inside the foyer. However, the defendant in *Silva* was expressly permitted by the 209A order to

make telephone contact with his children. See *id.* at 198. When his wife initially answered the call, that was a lawful contact incident to the order, and the *Silva* court said that such "brief and inevitable contact, . . . [if not] used as an occasion to harass, threaten, or intimidate the protected party," could not be criminalized. *Ibid.* In the instant case, however, the defendant violated the explicit words of the protective order when he left his vehicle. That he did so in a nonviolent way with the intention to return his son does not, as a matter of law, excuse the violation. Contrast *Commonwealth* v. *Leger, ante* 232 (2001) (defendant entitled to a requested instruction and to a jury determination regarding the effect of an incidental contact). In *Leger,* the defendant was subject to a "no-contact" order that prohibited him from calling his ex-wife, but not his children. See *id.* at 236. The defendant called to speak to his daughter. See *id.* at 234. His former wife answered the phone, refused to allow the defendant to speak to their daughter, and called the police. On review of his conviction, we held that an enjoined party is not required to abandon "an otherwise lawful attempt to contact a third person [when it] brings about an incidental contact with the protected party." *Id.* at 238.

The *Leger* case is distinguished from this case, not only because an instruction on "incidental contact" was requested in that case, but also because the defendant in the instant case was under a clear mandate to remain in his car during the exchange of the children. The posture of this case, then, stands in marked contrast to the situation in *Leger,* where the G. L. c. 209A order failed to spell out what protocol, if any, the defendant was required to follow in exercising lawful contact with his children.

We advert again to *Commonwealth* v. *Rauseo, supra,* where contact, not rising to the level of abuse or threats, constituted sufficient evidence to sustain a conviction under G. L. c. 209A. The defendant in *Rauseo* violated a "no contact" order when he left his car at the side of the street in front of the entrance to his wife's home and rang the doorbell. He buzzed an intercom system, which the wife answered, and he asked permission to go inside to see his son. The wife replied that he was sleeping and asked the defendant to leave. Minutes later the doorbell rang again; it was the defendant, who repeated his request to

see his son and demanded she bring the boy to the door. In that case, we held that despite potential ambiguity and inconsistencies between the G. L. c. 209A order and subsequent divorce orders permitting the defendant visitation, "there were no written orders that allowed the defendant to engage in the conduct for which he was convicted." 50 Mass. App. Ct. at 711.

Similarly, in *Commonwealth* v. *Mendonca*, 50 Mass. App. Ct. 684, 686 (2001), verbal contact was held sufficient to sustain a conviction under the statute. There, the defendant called his former girlfriend, the protected party, to speak to his grandchildren or to inquire about other family members in violation of the protective order's no contact provision. See *id.* at 685. We recognized that "no contact provisions may raise practical difficulties where it may be necessary for a defendant to have incidental conversation with a protected party in order to have permitted contact with others." *Id.* at 687 n.8. As in the situation described here, "the 'no contact' order did not contain an exception for [the incidental conduct] and, in fact, ordered the defendant 'not to contact [the protected party] . . . either in person, [or] by telephone.' " *Id.* at 687.

While we have noted the "practical difficulties" raised by visitation stipulations in 209A provisions, *id.* at 687 & n.8, a provision such as the one contained in this order preventing a father from personally retrieving his child from the mother's home "does not diminish the effectiveness of [a] custody order." *Commonwealth* v. *Rauseo*, 50 Mass. App. Ct. at 710 n.13. The father's conduct, expressly prohibited by the 209A order, was not excusable as incidental.

3. A final issue that the defendant argues on appeal concerns the admission of the former wife's testimony, which was replete with references to the defendant's past alleged violations of the protective order. On four separate occasions the former wife gave testimony — twice in a manner unresponsive to the prosecutor's questions — that the defendant had previously violated the restraining order. In the first instance, she was allowed to testify that one of the children said, "Daddy is in the building again." Shortly thereafter, the Commonwealth was allowed to introduce the former wife's testimony that "she was afraid because [the defendant] had broken [the order] again."

There was an objection to the first comment but not the second. Later, she was allowed to testify that the defendant "had been doing this, coming in. . . . [T]here have been other times that he has been on the stairs." Perhaps the most harmful statement she made was in response to a question about how long it took for the police to respond: "They have been out dozens of times, this particular time I don't [know]."

The long-standing rule, restated in *Commonwealth* v. *Triplett*, 398 Mass. at 562-564, and more recently in *Commonwealth* v. *Almeida*, 42 Mass. App. Ct. 607, 611 (1997), is that unless the defendant has made his character an issue in the trial, "the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purposes of showing his bad character or propensity to commit the crime charged, but such evidence may be admissible if relevant for some other purpose." *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1996). The Commonwealth argues that the former wife's testimony of past similar occurrences falls into the "continuing pattern" line of cases. Under this theory, the testimony demonstrated the entire relationship between the defendant and his former wife. See *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269-270 (1982); *Commonwealth* v. *Drew*, 397 Mass. 65, 79 (1986). We cannot determine, based on the fragmentary nature of the former wife's unresponsive statements or her answers to the prosecutor's questions, whether the alleged offending conduct occurred within a reasonable time of the events in question in order to fit into the "pattern" exception. We know that defense counsel did not request, and the judge did not conduct, a voir dire hearing to determine whether the principles of *Commonwealth* v. *Montanino*, 409 Mass. 500, 505 (1991), and *Commonwealth* v. *Almeida*, 42 Mass. App. Ct. at 612, apply. However, assuming without deciding that the testimony of prior offending conduct was improperly admitted, we can say with "fair assurance" that this testimony did not have a significant impact on the jury's decision. See and compare *Commonwealth* v. *Ford*, 397 Mass. 298, 302 (1986). In the circumstances of this case, evidence of the prior bad acts did not prejudice the defense. The key issue was whether the defendant's leaving his vehicle amounted to a violation of the

G. L. c. 209A order. On this point, the evidence was uncontested, and the credibility of the witnesses was not at stake. It is hard to think that the jury were likely to be swayed by hearing the former wife's complaints concerning past misdeeds. His defense was predicated on the theory that leaving the vehicle in these circumstances was a "technical violation" not subject to criminal sanctions. The jury were not likely to have trouble dealing with this issue because of the former wife's comments that the defendant had transgressed in the past. This was, if error, harmless. See *Commonwealth* v. *Royce*, 20 Mass. App. Ct. 221, 228-229 (1985); *Commonwealth* v. *Johnson*, 49 Mass. App. Ct. 273, 279-280 (2000).

*Judgment affirmed.*