## Commonwealth *vs.* Paul P. McKay.

No. 05-P-506.

Norfolk. June 7, 2006. - September 15, 2006.

Present: Green, Dreben, & Grainger, JJ.

*Abuse Prevention. Protective Order. Practice, Criminal,* Instructions to jury. *Intentional Conduct. Mistake. Evidence,* Best and secondary, Hearsay.

This court reversed the defendant's conviction of violating a "no contact" order issued under G. L. c. 209A based on a message the defendant left on his former fiancee's voice mail, where the defendant was entitled to a jury instruction on mistake or accident [400-402]; however, the defendant was not entitled to dismissal of the complaint due to evidentiary concerns regarding the voice mail message [402-403].

COMPLAINT received and sworn to in the Wrentham Division of the District Court Department on July 21, 2003.

The case was tried before *Emogene Johnson Smith*, J.

*John V. Siskopoulos* for the defendant.

*Pamela Alford*, Assistant District Attorney, for the Commonwealth.

GREEN, J. At his trial on a charge of violating a "no contact" order issued under G. L. c. 209A, the defendant did not dispute that he had left a voice mail message on his former fiancée's answering machine. His defense consisted essentially of his contention that he had dialed her number by accident, by pressing her "speed dial" entry in his cellular telephone while intending to call a female friend with the same first name (whose entry in his list of stored numbers was immediately adjacent to his former fiancée's). In furtherance of that theory, the defendant requested, but was denied, an instruction to the jury on mistake or accident. Based on our conclusion that the defendant was entitled to instruction on his theory of mistake or accident, we reverse the conviction.

*Background.* At trial, there was evidence to the following effect. On the evening of July 13, 2003, Foxborough police officers responded to a call arising from a dispute between the defendant and his former fiancée, Cynthia Whelahan, at the apartment they shared. The defendant was arrested and charged with assault and battery.[1] Thereafter, the defendant moved out of the apartment and an abuse prevention order issued under G. L. c. 209A, prohibiting him from contacting Whelahan.

Five days later, on July 18, 2003, the defendant had lunch with a friend named Cynthia Bowman. During lunch, the defendant received a telephone call from the Foxborough police department on his cellular telephone, advising him that police were available to accompany him to his former apartment to retrieve his personal belongings.[2] Bowman asked the defendant to call her after he had recovered his belongings. The defendant proceeded to the apartment, and retrieved his belongings without incident.

While driving from the apartment, the defendant dialed Whelahan's telephone number by means of pressing her "speed dial" entry on his cellular telephone. In Whelahan's apartment, her answering machine answered the call, and the defendant left a message. The precise phrasing of the message is a matter of some disagreement; the recorded message itself was not offered in evidence at trial. According to the defendant, he said,

> "Hey, hi it's Paul. I just called to amuse you. Hey, can you say Tessa? I went, I got most of my things, the majority of what I really and [*sic*] wanted. I got my laptop so that's great. She's decided she's keeping a whole bunch of stuff and we'll have to fight about that later. At any rate, just called to say, hey so hey."[3]

Whelahan called the Foxborough police department to report the message the defendant had left on her answering machine. Officer Scott Hodson (who previously had accompanied the

---

[1] The jury acquitted the defendant of the charge of assault and battery.

[2] The "no contact" order required police presence during that activity.

[3] Bowman testified that "Tessa" was a private term the two of them used as a form of shorthand to communicate a vulgar reference to a person who annoyed them.

defendant to the apartment) responded to the report and listened to the recorded message. At trial, after having his memory refreshed by looking at his police report, he described the message as:

> "This is Paul. I called to amuse you. Can you say temper? I called to say hi. Hi."[4]

The defendant testified that he dialed Whelahan's number by mistake and that he had intended to dial Bowman, as she had requested when he departed to retrieve his belongings. The defendant explained that Bowman's entry in the list of contacts he stored in his mobile telephone was immediately adjacent to Whelahan's,[5] and that he was not fully attentive to the task of scrolling through the list of phone numbers because he was driving at the same time, with his car filled with personal effects, and that he was somewhat distracted by the disruption of moving out of his former apartment. He attributed to similar distracting influences his inattention to the fact that Whelahan's voice delivered the recorded greeting when the answering machine answered the call.

The trial judge charged the jury according to Instructions 5.61 and 3.051 of the Model Jury Instructions for Use in the District Court (1995), the former pertaining specifically to violations of abuse prevention orders under c. 209A[6] and the latter

---

[4]Officer Hodson added, "That's the best I can remember."

[5]Whelahan appeared in his directory as "Cindy," Bowman as "Cindy B."

[6]Instruction 5.61 is as follows:

> "The defendant is charged with knowingly violating an abuse prevention order issued by a court. Section 7 of chapter 209A of our General Laws provides in substance that:

>> "Any violation of an order issued pursuant to chapter 209A ordering the defendant (to refrain from abusing the person who requested the order, or that person's child) (or) (to vacate and remain away from the [household] [multiple family dwelling] [or] [work place] of the person who requested the order) (or) (to refrain from contacting an individual directly or indirectly unless authorized by the court) shall be punished.

> "In order to prove the defendant guilty of this offense, the Commonwealth must prove four things:

relating generally to knowledge.[7] The judge denied the defendant's request for instruction to the jury that they should find him not guilty if they found that he called Whelahan by mistake.[8]

---

"*First*: That a court had issued an order pursuant to chapter 209A of our General Laws which

"*If relevant to evidence*: , among other things,

"ordered the defendant (to refrain from abusing [*alleged victim*]) (to vacate and remain away from the household or workplace located at [*address*]) (to refrain from contacting [*alleged victim*]);

"*Second*: That such order was in effect on the date that this violation of the order allegedly occurred;

"*Third*: That the defendant knew that the pertinent terms of the order were in effect, either by having received a copy of the order or by having learned of them in some other way; and

"*Fourth*: That the defendant violated the order by (abusing [*alleged victim*]) (failing to vacate the household or work place located at [*address*]) (reentering the household or work place located at [*address*]) (contacting [*alleged victim*])."

[7]Instruction 3.051 is as follows:

"I have already instructed you that one of the things the Commonwealth must prove beyond a reasonable doubt is that at the time of the offense the defendant knew that _____.

"This requires you to make a decision about the defendant's state of mind at that time. It is obviously impossible to look directly into a person's mind. But in our everyday affairs, we often look to the actions of others in order to decide what their state of mind is. In this case, you may examine the defendant's actions and words, and all of the surrounding circumstances, to help you determine the extent of the defendant's knowledge at that time.

"You should consider all of the evidence, and any reasonable inferences you draw from the evidence, in determining whether the Commonwealth has proved beyond a reasonable doubt, as it must, that the defendant acted with the knowledge that _____."

[8]Due to a malfunction in the electronic tape recorder used to record the trial, the transcript of the trial ends before the portion of the judge's instructions to the jury that form the basis of the defendant's challenge on appeal. Pursuant to Mass. R.A.P. 8, as amended, 430 Mass. 1601 (1999), the trial judge on September 1, 2005, entered an order stating that she instructed the

*Discussion.* In *Commonwealth* v. *Delaney*, 425 Mass. 587, 595-597 (1997), the Supreme Judicial Court considered and rejected a defendant's argument that, in order to support a conviction under G. L. c. 209A, § 7, the Commonwealth must show a "manifest intent" on the part of the defendant to violate the order. See *Commonwealth* v. *Collier*, 427 Mass. 385, 388 (1998). As a foundational matter, the statute "requires no more knowledge than that the defendant knew of the order." *Commonwealth* v. *Delaney*, 425 Mass. at 596.

Subsequent cases, however, have clarified that a defendant will not be held criminally liable for violations over which he lacked control. For example, in *Commonwealth* v. *Collier*, 427 Mass. at 389, the court considered a defendant who encroached the limits of a restraining order while he was a passenger in a vehicle driven by another person, and concluded that "the Commonwealth is required to prove beyond a reasonable doubt an intentional act by the defendant which led to the violation of the c. 209A order."[9] In *Commonwealth* v. *Leger*, 52 Mass. App. Ct. 232, 237-238 (2001), we concluded that no criminal violation arises from telephone contact incidental to the defendant's

---

jury in accordance with Instructions 5.61 and 3.051. Both model instructions include supplemental instructions, but the judge's order did not address whether she included any one or more of such supplemental instructions. Supplemental instruction number 3 to Instruction 3.051 provides, inter alia, that "[t]he requirement that the defendant's act must have been done 'knowingly' to be a criminal offense means that it must have been done voluntarily and intentionally, and not because of mistake, accident, negligence or other innocent reason." Accordingly, by order of this court on June 23, 2006, we asked the trial judge to clarify her previous order, to indicate whether she included any one or more of the supplemental instructions in her charge to the jury. By order entered on August 8, 2006, the judge clarified her prior order to state specifically that she did not administer any of the supplemental instructions to either Instruction 5.61 or Instruction 3.051. The judge went on to state her assumption that she did not give Instruction 6.09 of the Model Jury Instructions for Use in the District Court (1995), relating to accident. In light of our disposition of the case, we need not address the defendant's request that we strike the judge's comment in her second order regarding Instruction 6.09.

[9] The court in *Collier* went on to conclude that the evidence was sufficient for the jury to find such an intentional act, but that the absence of instruction to the jury clarifying the required intent required a new trial. See *Commonwealth* v. *Collier*, 427 Mass. at 389-390.

exercise of a right, not prohibited under the order, to contact another person (the defendant's child) living in the same household as the party protected by the order (the child's mother). Compare *Commonwealth* v. *Silva*, 431 Mass. 194, 198-199 (2000) (incidental telephone contact which degenerated into angry outbursts sufficient to support convictions). To similar effect is *Commonwealth* v. *Finase*, 435 Mass. 310, 315 (2001), where the court suggested that "accidental, mistaken, or unknowing violations of the distance requirements of an abuse prevention order" are not criminal. Most recently, in *Commonwealth* v. *Raymond*, 54 Mass. App. Ct. 488, 493 (2002), we held that "a defendant cannot be convicted of violating a 'no contact' order issued under c. 209A where the contact occurs in circumstances where the defendant did not know, and could not reasonably have been expected to know, that the protected person would be present," citing *Commonwealth* v. *Wallace*, 14 Mass. App. Ct. 358, 364 (1982), for the proposition that "in the absence of specific language to the contrary, the Legislature does not intend to make accidents and mistakes crimes."

In the present case, the heart of the defendant's theory of defense was that his telephone call to his former fiancée occurred by accident. The Commonwealth suggests that the defendant should nonetheless be held accountable for his actions as intentional, because he could have done more to prevent the accident from occurring (by removing his former fiancée's entry from his list of stored numbers, exercising greater care in pressing the buttons on his telephone, or paying more attention to the voice mail greeting when his call was answered). The argument misses the point; the question is not whether the defendant exercised reasonable care (or, put another way, was negligent), but whether the defendant intentionally violated the c. 209A order. The defendant's act in the present case was voluntary in the sense that he intended to press a button on his telephone, but the effect of that voluntary act (if the defendant's characterization of the evidence is to be believed)[10] was no more intentional than in the case of a defendant seated as a passenger in a vehicle being directed by another person, or a

---

[10]Whether the defendant is to be believed is, of course, a question for the jury.

defendant who enters a building without knowledge of its occupants.[11]

Both parties vigorously argued in their closings that the defendant's telephone call was (or was not) the result of an accident. However, without instruction on the point the jury were not informed that mistake or accident would absolve the defendant of criminal liability for the call he indisputably made to his former fiancée. The defendant is entitled to a new trial.

*Other issues.* We reject the defendant's claim that he is entitled to dismissal of the complaint by reason of the Commonwealth's failure to preserve the recorded voice mail message that was the subject of the alleged c. 209A violation. Even if the defendant's testimony regarding the content of the message is credited, rather than that of Officer Hodson, the defendant's version of the content of the message is not particularly exculpatory. Moreover, the defendant could have attempted to obtain, or otherwise to record and preserve, the message as readily as the Commonwealth at the time of his arrest, had he wished to present it at trial.[12] Because the issues could recur in a retrial, we also express our views that testimony concerning the content of the voice mail message is not barred by the best evidence rule (which does not apply to tape recordings, see *Commonwealth* v. *Duhamel*, 391 Mass. 841, 844 [1984]), and that Officer Hodson's testimony as to the content of the message was not hearsay, as the purpose for which it was offered related to the fact that it was made, and to whom, rather

---

[11]We do not intimate that a defendant may with impunity recklessly avoid or ignore knowledge that would allow a reasonable person to anticipate that his act would result in a violation of a restraining order. In the present case, however, the defendant's contention is that he inadvertently pressed a wrong number on his telephone.

[12]The record does not illuminate the nature of the answering machine or the recording of the message, or even whether the message still existed in any form at the time of trial. By motion to expand the record on appeal, the defendant suggests that the Commonwealth's culpability for failing to preserve the recorded message was borne out by a subsequent police internal investigation which concluded that Whelahan preserved a copy of the recording. If so, however, the defendant could have obtained a copy of the recording through discovery and submitted it in evidence at trial.

than to the truth of any matter asserted in it. See *Commonwealth* v. *Sullivan*, 410 Mass. 521, 526 (1991).[13]

*Conclusion.* The defendant's judgment of conviction on the charge of violation of a G. L. c. 209A restraining order is reversed, the verdict is set aside, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[13]Even if the statement were offered for the truth of the matter asserted, it would be admissible under the exception to the hearsay rule for statements by a party opponent. See *Commonwealth* v. *Mendes*, 441 Mass. 459, 467 (2004).