## COMMONWEALTH *vs.* JOSEPH THOMPSON.

No. 97-P-1866.

Worcester. June 12, 1998. - September 28, 1998.

Present: KASS, SPINA, & BECK, JJ.

*Abuse Prevention. Waiver. Constitutional Law,* Waiver of constitutional rights,
Freedom of speech and press.

A criminal defendant, convicted of three counts of violating an abuse preven-
tion order forbidding him from contacting another "in writing," waived his
right to appellate review of claims of violation of his free speech rights
where he had not raised the issue at trial. [524]

This court expressed the view that speech which places a victim of abuse in
reasonable apprehension of harm is conduct unrelated to any message the
abuser might seek to send, and that such contacts are not protected by the
First Amendment to the United States Constitution. [524-525]

COMPLAINT received and sworn to in the Worcester Division of
the District Court Department on November 6, 1996.

The case was heard by *Sarkis Teshoian,* J., and a motion for
postconviction relief was heard by him.

*Peter F. Kuntz* for the defendant.

*Harry D. Quick, III,* Assistant District Attorney, for the Com-
monwealth.

KASS, J. Joseph Thompson was convicted at a bench trial in
the District Court of three counts of violating an abuse preven-
tion order (order) obtained by Tommie Rae Algieri pursuant to
G. L. c. 209A, §§ 3 and 7. On appeal, Thompson's principal
contention is that a "no contact" provision in the order violated
his right to free speech. We conclude that issue was not properly
preserved for appeal and affirm the judgment.

1. *Facts.* The essential facts are not in dispute. On April 29,
1996, Algieri obtained an ex parte abuse prevention order under
G. L. c. 209A, § 4, from a Probate Court judge. Among other
things, that order forbade Thompson from having any

contact, "either in person, by telephone, *in writing* or otherwise" with Algieri (emphasis supplied). Nine days later, i.e., on May 8, 1996, the Probate Court judge extended the order for one year after a hearing at which Thompson did not appear. While incarcerated (for reasons not stated in the record), Thompson sent three letters to Algieri on consecutive days, July 30, 31, and August 1, 1996. He used a false name and return address on the envelopes because he knew that by sending the letters he was violating the abuse prevention order.

2. *Waiver.* None of the issues presented by Thompson on appeal was raised at the trial; they were presented to the District Court judge for the first time in a motion labelled as one for relief from judgment but which, in terms of the motion's content, was for a new trial. Thompson's claim of deprivation of free speech and the collateral constitutional arguments that he raised were well established constitutional principles at the time of trial and the failure to raise them at trial, therefore, worked a waiver of those rights. *Commonwealth* v. *Richardson*, 361 Mass. 661, 663 (1972). *Commonwealth* v. *Amirault*, 424 Mass. 618, 639 (1997). *Commonwealth* v. *Laskowski*, 40 Mass. App. Ct. 480, 482-483 (1996). See *Commonwealth* v. *Bowler*, 407 Mass. 304, 307-308 (1990). Cf. *E.H.S.* v. *K.E.S.*, 424 Mass. 1011, 1011-1012 (1997). As to the constitutional claims raised in Thompson's motion for a new trial, the District Court judge, in an excess of modesty, declined to pass on them for the reason that he had limited authority. A judge of the District Court does, of course, have authority to rule on constitutional issues and, indeed, had they been presented at trial, the judge would have been bound to do so. See *ibid.*, *Commonwealth* v. *Laskowski*, *supra* at 482-483. The judge's declination on the motion for a new trial cannot be taken as the sort of full consideration which would revive an otherwise lost issue for appellate review under the principles recently discussed in *Commonwealth* v. *Hallett*, 427 Mass. 552, 553-555 (1998). Ordinarily, the judge's mistaken view about his power to act would present an occasion for a remand. We think it is in the interest of judicial economy to state our view of the merits.

3. *The free speech question.* Had Thompson properly preserved the constitutional points, he would not have been successful. When an expressive activity produces "special harms distinct from their communicative impact, such [activity is] entitled to no constitutional protection." *Roberts* v. *United States*

*Jaycees,* 468 U.S. 609, 628 (1984). See, e.g., *Commonwealth* v. *Robicheau,* 421 Mass. 176, 182-183 (1995) (speech that places the victim in reasonable apprehension of imminent serious physical harm is conduct equivalent to the crime of assault and accordingly is unprotected by the First Amendment). The harm created by contact from an abuser — the inability of the victim to escape the abusive relationship fully and the fear created by the abuser's continuing presence — is distinct from and unrelated to any message the abuser might be seeking to send. While an abuser has a right to speak his mind freely in any number of forums, he has no right to seek out and contact the victim of his abuse, forcing that victim to endure his unwanted and destructive presence in her life — no matter how harmless or important the message he seeks to deliver. Cf. *Rowan* v. *United States Post Office Dept.,* 397 U.S. 728, 736-738 (1970). Accord *Vermont* v. *Mott,* 166 Vt. 188, 194-195 (1997). When offensive, or even harmful, speech takes place in a public forum and is directed to no single person, anyone who wishes not to listen may walk away. *Erznoznik* v. *Jacksonville,* 422 U.S. 205, 210-211 (1975). *Frisby* v. *Schultz,* 487 U.S. 474, 484-485 (1988). When an abuser singles out the victim of his abuse (as judicially determined) and directs unwanted communications to that person, the victim cannot walk away. *Ibid.* Thompson's remaining points do not warrant even parenthetical comment.

*Judgment affirmed.*

*Order denying postconviction
relief affirmed.*