NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-463

COMMONWEALTH

vs.

CELESTE HEDEQUIST.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from her conviction by a District Court jury of violating a harassment prevention order (order or HPO), in violation of G. L. c. 258E, § 9, stemming from an e-mail that she copied to D.L., the plaintiff who obtained the order.  At trial, the Commonwealth proceeded on the theory that the defendant violated two separate conditions of the order. First, the Commonwealth argued that the defendant, by copying her e-mail to D.L., violated the order's no-contact provision. Second, the Commonwealth argued that the contents of the defendant's e-mail constituted an act of harassment or abuse prohibited by the order.

On appeal, the defendant claims her conviction must be vacated because the evidence was insufficient to prove that the defendant contacted, harassed, or abused the plaintiff in violation of the order, particularly because the contents of the defendant's e-mail constituted speech protected by the First Amendment. The defendant also contends that the conviction must be vacated as there was insufficient evidence for either of these alternative theories of proof and the jury were not required to designate which theory they unanimously agreed on in reaching their verdict.

In addition, the defendant claims the judge erred in denying her motion to dismiss the complaint because (1) it was unsupported by probable cause, and (2) the clerk-magistrate deprived her of her right to be heard.

Although we conclude the evidence was sufficient to establish the defendant violated the no-contact condition of the order by intentionally copying her e-mail to D.L., we conclude the evidence was legally insufficient to establish the contents of her e-mail amounted to a "true threat," or other constitutionally unprotected speech, as required to constitute an act of harassment. See O'Brien v. Borowski, 461 Mass. 415, 425 (2012) (abrogated on other grounds by Seney v. Morhy, 467 Mass. 58, 61-62 [2014]).

2

Therefore, we reverse the defendant's conviction, because "it is impossible to tell" whether the jury based their verdict on the ground for which the evidence was sufficient to convict, or on the theory for which the evidence was insufficient. Commonwealth v. Vizcarrondo, 427 Mass. 392, 398 (1998).

Finally, we conclude the judge did not err in denying the defendant's motion to dismiss the complaint.[1]

Background. We summarize the evidence presented at the trial in the light most favorable to the Commonwealth, reserving some details for later discussion.

In 2016, the defendant and her husband had four children between the ages of six and twelve years old in a Massachusetts school district. By December 2016, the defendant maintained an adversarial relationship with members of the school committee and school educators and administrative staff, including D.L., for at least three reasons. First, the defendant was dissatisfied with the school district's response to her formal complaint that one of her children was being bullied at school. Second, the defendant responded to a school principal's discipline of one of her children by confronting the principal

_____

[1] On appeal, the defendant also claims her conviction must be reversed on grounds that the judge abused his discretion concerning two evidentiary issues, and because the Commonwealth's closing argument was inflammatory. We do not resolve these issues because we reverse the conviction on other grounds.

3

in a manner the school found alarming.[2]  Third, the defendant and her husband opposed a no-trespass order the school had obtained, first against the defendant, and eventually against her entire family.

The defendant and her husband met with D.L. on December 22, 2016, to discuss these ongoing issues.  At the end of the meeting, the defendant, ostensibly upset with D.L., stated she wanted time with D.L.'s children to torture them.[3]

Based on this statement, as well as what D.L. described as "a continuing pattern of harassing e-mails threatening my family, disparaging me . . . ," he sought a harassment prevention order against the defendant on February 10, 2017.  An order pursuant to G. L. c. 258E issued, and the order was served on the defendant on the same day.  The order prohibited the defendant from contacting, abusing, or harassing D.L.

About nine months later, in November 2017, the defendant and her husband appealed to M.K., a member of the school committee, to rescind the school's no-trespass order.  On

_____

[2] D.L. testified that the defendant, accompanied by two of her children, pounded on the principal's school window after school hours, and chanted to her, "You evil bitch."  This encounter was admitted as a prior bad act of the defendant.  The judge allowed its admission to explain the school administration's rationale for obtaining a no-trespass order against the defendant and her family.

[3] This statement was also admitted as a prior bad act.

4

November 18, 2017, M.K. sent an e-mail to the defendant advising her that the no-trespass order would remain in effect. Notably, M.K. copied D.L. and another school committee member by adding their respective e-mail addresses in the "Cc" field in his e-mail to the defendant.

The defendant replied, via e-mail, to M.K. that same day by stating:

"Dear [M.K.],

"I am sorry to report that [D.L.]'s order is not legal, violates due process, is abusive, among other things.

"I also noticed that you copied [D.L.] on your e-mail to me. Please do not attempt again to have me respond accidentally to a group e-mail with him copied on it and in violation of any HPO.

"This again underscores your manipulation and your pattern of deceptive and abusive behavior as you know that there is to be no contact between him and myself.

"Take care,

"Celeste Hedequist." (Emphasis added.)[4]

Although the defendant added additional e-mail addresses to the "Cc" field in her reply e-mail to M.K., she did not include D.L.'s address in the Cc field.

At a meeting in December 2017, the defendant's husband again appealed to M.K. to rescind the school's no-trespass

---

[4] Both M.K. and D.L. testified they were familiar with the defendant's e-mail address based on prior e-mail communications with her.

5

order.  On December 15, 2017, the defendant reacted to this meeting by sending another e-mail to M.K. through the same November 18, 2017 e-mail chain described above.  The defendant copied D.L. and a school committee member in this e-mail to M.K.  The defendant's December 15, 2017 e-mail, which served as the basis for the criminal complaint, stated:

> "[M.K.],
>
> "Don't ever smirk at my husband again.  We are going to do to your children what you have done to ours.  You are so creepy, and Dan said you smell like feces.  You are so gross.  Go take care of your poor, poor special child.  I hear your face gets red like a tomato when you['re] mad.  Is that from all the alcohol you drink[?]  When your children start to feel what ours have felt, then you will be a better person.  We will help you, [M.K.], you fucking wack job bastard."

D.L. forwarded this e-mail to police on December 19, 2017.

Discussion.  1.  Sufficiency of the evidence.  The defendant claims that the contents of the December 15, 2017 e-mail were protected as free speech and as such, could not constitute either an act of abuse or harassment, or contact in violation of the order.

The Commonwealth counters that the evidence was sufficient to show the defendant violated the order, first, by making intentional contact by copying D.L. on her e-mail to M.K.; and second, because her speech constituted a true threat to D.L., and thus fell outside the protections of the First Amendment.

6

In reviewing a claim that the verdict was not supported by sufficient evidence, the "question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).

To convict a defendant of violating a harassment prevention order, the Commonwealth must prove that (1) a court had issued such an order; (2) the order was in effect on the date that the violation allegedly occurred; (3) the defendant knew the terms of the order; and (4) the defendant violated the order. Commonwealth v. Kurko, 95 Mass. App. Ct. 719, 721 (2019). The issues on appeal pertain only to the element of whether the defendant violated the order.

As discussed in more detail below, the jury instructions for the single count of violation of the order provided alternative theories of guilt by presenting the jury with the choice whether the defendant committed the crime by either (1) abusing or harassing D.L., or (2) contacting D.L. Because we do not know which theory the jury relied on in reaching their general verdict, we must examine the sufficiency of the evidence underlying each alternate theory of proof. See, e.g., Commonwealth v. Kozubal, 488 Mass. 575, 594 (2021) (jury

7

instruction allowing for alternative grounds of proof, without requiring jury to indicate on which they relied, did not amount to reversible error because evidence for each ground was sufficient to support verdict).

a.  The no-contact provision.  The order against the defendant included the following no-contact provision:

"You are ordered not to contact the Plaintiff either in person, by telephone, in writing or otherwise, either directly or through someone else, and to stay at least [one hundred] yards from the Plaintiff even if the Plaintiff seems to allow or request contact.  The only exception to this Order is that you may send to the Plaintiff by mail or by sheriff or other authorized officer copies of papers filed with the court when that is requires by statue or court rule."

Such an order "mandates that the defendant not communicate by any means with the protected party."  Commonwealth v. Finase, 435 Mass. 310, 314 (2001).  The question whether the defendant violated the order by contacting D.L. is a distinct and separate inquiry from whether the contents of the message constituted protected speech.  See Commonwealth v. Thompson, 45 Mass. App. Ct. 523, 525 (1998) ("The harm created by contact from an abuser . . . is distinct from and unrelated to any message the abuser might be seeking to send").

We reject the defendant's claim that the act of copying D.L. on an e-mail constituted conduct that possessed sufficient communicative character to be protected by the First Amendment. See Texas v. Johnson, 491 U.S. 397, 404 (1989).  It is the fact

8

that D.L. received the e-mail, not any idea expressed within the e-mail, that violated the no-contact provision of the order. The order would equally have been violated by an e-mail devoid of text.

We thus conclude that the defendant's act of copying an e-mail to D.L. did not constitute protected speech, but was instead an act which would qualify under the broad definition of contact prohibited by the order.  See, e.g., Commonwealth v. Russell, 46 Mass. App. Ct. 307, 309-310 (1999) (evidence of unaccepted collect calls from incarcerated defendant to his wife were sufficient to establish violation of "no contact" order regardless of content of calls); Commonwealth v. Mendonca, 50 Mass. App. Ct. 684, 688 (2001) ("violation of an order not to contact by telephone is established by proof of unexcused conversation with a protected party over the telephone and without proof that the protected party was placed in fear").

Accordingly, to prove a violation of the no-contact provision of the order the Commonwealth was required to produce sufficient evidence of such contact, but not that the contents of the contact amounted to either abuse or harassment.

Acknowledging the Legislature "did not intend 'to make accidents and mistakes crimes'" for the purposes of "no contact" orders, Finase, 435 Mass. at 315, quoting Commonwealth v. Collier, 427 Mass. 385, 388 (1998), we conclude the evidence was

sufficient for a rational jury to find that the defendant intentionally made contact with D.L. in violation of the order by copying his e-mail address to the defendant's December 15, 2017 e-mail to M.K. The evidence demonstrated the defendant was familiar with the function and consequences of including an e-mail address in the "Cc" field, as she, in her November 18, 2017 e-mail reply, reprimanded M.K. for exposing her to a potential violation of the order by copying D.L.'s address in his e-mail to her. The jury could also reasonably infer that the defendant had intentionally removed D.L.'s e-mail address from the list of copied recipients in her reply to M.K. on November 18, 2017, to avoid violating the order's no-contact provision.

However, when the defendant, on December 15, 2017, sent an e-mail to M.K. through the November 18, 2017 e-mail thread discussed above, the evidence supported the jury concluding that the defendant modified the existing intended recipients by entering D.L.'s e-mail address in the "Cc" field.[5] The jury was free to reject the defendant's claim that she accidentally copied D.L., and instead reasonably conclude based on the circumstantial evidence that the defendant intentionally added

---

[5] The defendant also added a new school committee member to the "To" section of the e-mail.

D.L.'s e-mail address to her e-mail to M.K.[6]  See Collier, 427 Mass. at 389-390; Russell, 46 Mass. App. Ct. at 310.

Thus, we conclude the defendant's act of copying D.L. in her e-mail to M.K. was sufficient to constitute a violation of the "no contact" provision of the order.  Finase, 435 Mass. at 314.  See Russell, 46 Mass. App. Ct. at 309-310.

b.  Refrain from harassment or abuse condition.  It is undisputed that the contents of the defendant's December 15, 2017 e-mail copied to D.L. constituted speech.  "[T]he Legislature crafted the civil harassment act, G. L. c. 258E, with the intent that the definition of harassment exclude constitutionally protected speech . . . ."  O'Brien, 461 Mass. at 425.  For speech alone to constitute sufficient evidence of either harassment or abuse under G. L. c. 258E, the speech must not be protected by the First Amendment.  Id. at 422, 427-429. "While most speech is protected from government regulation by the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution,

---

[6] At the defendant's request, the judge instructed the jury that the Commonwealth had the burden of proving "the alleged violation did not arise by accident, unknowingly or through inadvertence."  See Commonwealth v. Podkowka, 445 Mass. 692, 699 (2006) ("Accident . . . is treated as if it is an affirmative defense, which, when it negates an essential element of a crime . . . must be disproved by the Commonwealth beyond a reasonable doubt" [citations omitted]).

there are 'certain well-defined and narrowly limited classes of speech' that are not protected," which include "true threats" and "fighting words"[7] (citations omitted). Id. at 422. Thus, speech that constitutes "true threats," as relevant here, is constitutionally unprotected and can amount to harassment or abuse under G. L. c. 258E. Id. at 425.

For speech to rise to the level of a "true threat," the speaker must "[mean] to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." O'Brien, 461 Mass. at 423, quoting Virginia v. Black, 538 U.S. 343, 359-360 (2003). The "'true threat' doctrine applies not only to direct threats of imminent physical harm, but to words . . . that -- taking into account the context in which they arise -- cause the victim to fear such harm now or in the future and evince intent on the part of the speaker . . . to cause such fear." O'Brien, supra at 425.

"In the usual case, whether a communication constitutes a threat or a true threat is a matter to be decided by the trier

---

[7] Speech amounting to "fighting words" is "limited to words that are likely to provoke a fight:  face-to-face personal insults that are so personally abusive that they are plainly likely to provoke a violent reaction and cause a breach of the peace." O'Brien, 461 Mass. at 423.  Because the Commonwealth does not contend the defendant's e-mail to M.K. constituted fighting words, our review is limited to whether the communication amounted to a "true threat."

of fact" (quotation and citation omitted).[8] Commonwealth v. Bigelow, 475 Mass. 554, 567-568 (2016).

The Commonwealth argues that the contents of the defendant's e-mail, placed in context of her prior statement she made concerning D.L.'s children, constituted a true threat to D.L. We are not persuaded.

Examining the defendant's e-mail in the context of her conduct preceding it, her statements as directed to M.K. cannot reasonably be construed as a serious expression of an intent to cause physical harm to D.L. or his children, but rather represented a hyperbolic expression of her frustration with the school administration over a myriad of ongoing issues. Compare, e.g., United States v. Fulmer, 108 F.3d 1486, 1490-1492 (1st Cir. 1997) (defendant's voicemail message to agent that "[t]he silver bullets are coming" amounted to sufficient evidence of "true threat"), with Watts v. United States, 394 U.S. 705, 706-708 (1969) (defendant's alleged statement that he would refuse induction into Armed Forces and "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J."

---

[8] "[A] court may properly dismiss an indictment as a matter of law if it concludes that no reasonable jury could find that the alleged communication constitutes a threat or a true threat." Bigelow, 475 Mass. at 567-568, quoting United States v. Stock, 728 F.3d 287, 298 (3d Cir. 2013).

13

constituted "political hyperbole," rather than "true threat" [quotation omitted]).

We allow that the contents of the defendant's e-mail to M.K. were offensive, and that the words expressed failed to represent a reasonable attempt to respectfully communicate a position or dispute concerning the education of her children.

However, in determining whether speech constitutes a "true threat," thus forfeiting constitutional protection, our precedent requires either an explicit expression of the intent to commit an act of violence to the victim, or evidence of context that allows for a less explicitly threatening statement to evince such intent to commit violence, nonetheless. O'Brien, 461 Mass. at 424-425, citing Commonwealth v. Chou, 433 Mass. 229, 236 (2001). It is undisputed that the defendant's e-mail does not contain an explicit threat to harm either D.L. or his children. The issue is whether the contents of the e-mail, given the history of animus the defendant had toward D.L., allowed a rational jury to conclude the statement amounted to a true threat.

This court provided an example of sufficient context present to support an inference that speech constituted a "true threat" in J.C. v. J.H., 92 Mass. App. Ct. 224, 225-229 (2017). This court concluded that a defendant's statements to the plaintiff of a restraining order that included "[you] should be

14

scared," "bitch," "[you will] pay the consequences," and that "[t]his will end badly for [you]" amounted to sufficient evidence of true threats when viewed in context of the defendant refusing to stop following and contacting the victim over an extended period of time, despite admonitions from law enforcement. Id.[9]

Such context is lacking here. We disagree with the Commonwealth that the defendant's prior statement that she wanted to torture D.L.'s children provided sufficient context to support the reasonable inference that, by copying D.L. in her e-mail to M.K., she intended to convey an intent to physically harm D.L. or his children.

Instead, the evidence supported the inference that the defendant, upset by the school committee's refusal to rescind the no-trespass order, lashed out at M.K., as she had done

---

[9] The following cases provide further examples of sufficient evidence of speech amounting to true threats: Chou, 433 Mass. at 235-237 (defendant's flyers that included sexually charged language and stated victim is missing constituted "true threat," as "defendant's language had no expressive purpose but was instead, intended to 'get back' at the victim by placing her in fear that she might suffer some sexual harm or wind up among the 'missing'"); Commonwealth v. Sholley, 432 Mass. 721, 725-727 (2000) (defendant's statement "Watch out, Counselor," to assistant district attorney, amounted to "true threat" when considering defendant's demeanor, tone of voice, and predictions of "war" and "bloodshed"); A.S.R. v. A.K.A., 92 Mass. App. Ct. 270, 278-280 (2017) (defendant's statements to her former boyfriend that "she fantasized about killing [him]," constituted "true threat").

15

previously to D.L., by making comments about subjecting his children to the bullying that she believed her child had encountered at school. Although the contents of the defendant's e-mail to M.K. may constitute harassment in the colloquial sense, they did not rise to the level of a true threat. See Seney, 467 Mass. at 59 & n.2, 63-64 (e-mail sent by little league player's mother to head coach describing plaintiff "in unflattering terms" and threatening to "forward this email along to the rest of the team if these issues are not resolved" did not amount to true threat sufficient for act of harassment "because, at the very least, it was not directed at him," even when considered in context of defendant's other explicit threats to "punch [plaintiff] in the face" and "break both of [his] knees"); Van Liew v. Stansfield, 474 Mass. 31, 33, 39 (2016) (finding phone call where defendant yelled that plaintiff was "wrong, uneducated or stupid" did not amount to "'true threat' of imminent physical harm or words that would cause someone to fear such harm" even considering defendant had previously "threatened" to "com[e] after" victim [quotation and citation omitted]).

We further conclude there was insufficient evidence to persuade a rational fact finder that the e-mail caused D.L. to fear that the defendant intended to commit an act of unlawful violence to him or his children. D.L. testified that, four days

16

after being copied on the defendant's December 15, 2017 e-mail, he forwarded it to the police "[b]ecause [he] felt like it was a violation of [his] HPO." When the assistant district attorney asked him if the e-mail "cause[d] [him] any personal concerns," D.L. responded that it did because "[a]ny contact with [the defendant] causes [him] concern"; he was not asked to elaborate. While it is understandable that the defendant's e-mail to M.K. caused D.L. personal distress, his expression of concern did not rise to the level of fear of physical harm required to meet the standard set forth for harassment under G. L. c. 258E. See Van Liew, 474 Mass. at 38-39; C.E.R. v. P.C., 91 Mass. App. Ct. 124, 127-128 (2017) (plaintiff's testimony that defendant's "harassing and abusive" conduct caused her "stress and anxiety" was insufficient evidence that act "cause[d] her fear" of physical harm sufficient for harassment).[10]

c. Jury instructions. Our conclusion that the evidence was insufficient for a rational jury to find the defendant's e-mail amounted to harassment or abuse requires us to set aside the verdict, even though there was sufficient evidence the

---

[10] Because we conclude the contents of the defendant's e-mail did not constitute a true threat, and thus cannot form the basis for a violation of the order, we need not consider whether the contents sufficiently related to M.K.'s role as an elected member of the school committee, and thus qualified as protected political speech. See Bigelow, 475 Mass. at 567-568; Van Liew, 474 Mass. at 38.

17

defendant contacted D.L. in violation of the order, because "[i]f the evidence presented to the jury would warrant a conviction on one ground, but not on another, and it is impossible to tell on which ground the jury relied, the verdict must be set aside on appeal" (citation omitted).[11] Commonwealth v. Fragata, 480 Mass. 121, 129-130 (2018). This rule applies when the grounds for conviction presented in a single charge may be sufficiently distinct from each other to constitute different factual bases, and either ground serves as an independent basis for the conviction. Commonwealth v. Rollins, 470 Mass. 66, 78-79 (2014) (setting aside defendant's conviction of one count of possession of child pornography where it was impossible for court to discern which of two photographs -- only one of which met statutory definition of pornography -- submitted to jury served as premise for their verdict).

For example, in Commonwealth v. Johnson, 45 Mass. App. Ct. 473, 475-478 (1998), this court reversed a conviction of violating an abuse protective order, pursuant to G. L. c. 209A, because the jury instruction permitted a conviction based on a

---

[11] We need not decide whether the defendant's objection to the judge's instruction on harassment preserved this issue, considering our conclusion that the uncertainty of which theory the jury based their verdict created a substantial risk of a miscarriage of justice that requires reversal. See Commonwealth v. Rollins, 470 Mass. 66, 78-79 (2014).

finding that the defendant violated the order "by abusing [the victim], '. . . and/or [by] contacting [her],'" where contact was not prohibited by the order. This court concluded this instruction created a substantial risk of a miscarriage of justice. Id.

Here, the judge instructed the jury that they could convict the defendant if they found the Commonwealth met its burden of proving that "the defendant violated the order by abusing or harassing [D.L.], or contacting [D.L.] directly or indirectly . . . ."[12] The issue whether the contents of the defendant's e-mail constituted a true threat, and as such violated the order to refrain from harassing or abusing D.L., is a sufficiently distinct course of conduct, requiring different elements of proof, from the issue whether the defendant violated the no-contact condition by intentionally copying D.L. in her e-mail to M.K. See, e.g., Fragata, 480 Mass. at 129-130 (evidence of defendant's actions of (1) preventing victim from calling 911, and (2) preventing victim from leaving her apartment constituted

---

[12] The assistant district attorney asked the jury to find the defendant guilty of both contacting and harassing D.L. during the opening statement and closing argument. We note that, "[w]here, as here, multiple theories of criminal liability [were] presented to a jury, the Commonwealth would be well advised to request a special verdict indicating the precise basis for any conviction to avoid potentially needless reversals." Commonwealth v. Manzelli, 68 Mass. App. Ct. 691, 695 n.8 (2007).

alternative ground to establish elements of witness intimidation); Rollins, 470 Mass. at 78-79; Johnson, 45 Mass. App. Ct. at 475-478.  Contrast Commonwealth v. Oquendo, 83 Mass. App. Ct. 190, 193-194 (2013) (force and threat of bodily injury alternative ways to prove single element that defendant compelled rape victim to submit, and not separate theories of guilt).

Because the evidence of harassment or abuse was insufficient, the verdict must be set aside.  The Commonwealth may retry the defendant on the ground that the defendant contacted D.L. in violation of the order, considering sufficient evidence was introduced to support a conviction on that basis.[13] See Fragata, 480 Mass. at 130.

2.  Motion to dismiss the complaint.  We reject the defendant's claim that the judge erred by denying her motion to dismiss the complaint because (1) the clerk-magistrate failed to consider the defendant's evidence as a complete defense to probable cause that she violated the order; and (2) the clerk-

---

[13] We note the judge did not instruct the jury that the Commonwealth bore the burden to prove that the speech at issue in the defendant's e-mail qualified as constitutionally unprotected speech that could constitute harassment.  See Bigelow, 475 Mass. at 567-568.  The defendant raised no objection to the absence of such instructions at trial, nor does she raise the issue on appeal.  The issue therefore is not before us.

magistrate denied the defendant's right to be heard by refusing to allow the defendant's husband to testify.

"After the issuance of a complaint, a motion to dismiss will lie for a failure to present sufficient evidence to the clerk-magistrate (or judge), for a violation of the integrity of the proceeding, or for any other challenge to the validity of the complaint" (citations omitted). Commonwealth v. DiBennadetto, 436 Mass. 310, 313 (2002). We review a challenge to the sufficiency of probable cause supporting the complaint de novo, assessing the evidence submitted to the clerk-magistrate in the light most favorable to the Commonwealth. See Commonwealth v. Leonardo L., 100 Mass. App. Ct. 109, 111 (2021).

At the show cause hearing, a police officer read an incident report detailing evidence of D.L.'s order against the defendant and the text of the e-mail the defendant allegedly copied to D.L. After the officer concluded his presentation of the evidence, the defendant testified, in summary, that when replying to M.K.'s e-mail, she accidentally copied D.L. She did not deny that she had sent the e-mail.

Although the clerk-magistrate denied the defendant's request to have her husband testify, she allowed the defendant's husband to speak to the defendant on the record. In speaking to her husband, the defendant sought to confirm her account that

21

her "reply all" to M.K.'s e-mail constituted an inadvertent contact with D.L.

We conclude ample probable cause supported the complaint against the defendant. Contrary to the defendant's argument, the clerk-magistrate does not act as a fact finder, but rather determines whether there is probable cause to issue a complaint based on finding "reasonably trustworthy information . . . sufficient to warrant a prudent [person] in believing that the defendant had committed . . . an offense" (citation omitted). Commonwealth v. Bell, 83 Mass. App. Ct. 61, 63 (2013).

Even assuming arguendo that the clerk-magistrate erred by declining to consider whether the defendant's claim of accident established a complete defense, her probable cause determination was still correct. Especially as the defendant did not dispute the accuracy of the police report and instead only offered an affirmative defense, the officer's testimony and the order itself served as "reasonably trustworthy information" sufficient to allow the clerk-magistrate to find ample probable cause the defendant violated the no-contact provision of the order by copying D.L. on her e-mail to M.K. Bell, 83 Mass. App. Ct. at 63. See Commonwealth v. Irick, 58 Mass. App. Ct. 129, 132 (2003) ("at a show cause hearing it is not enough for the accused to contradict, or even cast some doubt on, the complainant's statements"). The clerk-magistrate was bound to

22

view the evidence in the light most favorable to the Commonwealth, see Leonardo L., 100 Mass. App. Ct. at 111, and was not required to credit the defendant's claim of accident. See Irick, supra at 132.

Furthermore, the clerk-magistrate's denial of the defendant's request for her husband to testify did not deprive the defendant's right to be heard considering her husband's testimony would have been cumulative.[14] "[T]he clerk-magistrate retains discretion to limit the number of defense witnesses to prevent cumulative or irrelevant testimony." DiBennadetto, 436 Mass. at 314. Here, the clerk-magistrate, decided that testimony from the defendant's husband was unnecessary to her probable cause determination only after hearing the defendant's admission to the allegations in the complaint. Thus, if allowed, the testimony of the defendant's husband would have been inconsequential to the clerk-magistrate's probable cause determination. We are therefore satisfied that the defendant was properly afforded the "right to offer . . . her version of events" at the hearing, providing the defendant the full opportunity to be heard. Boston Globe Media Partners, LLC v. Chief Justice of the Trial Court, 483 Mass. 80, 85 (2019).

---

[14] It is evident from his on-the-record conversation with the defendant that the defendant's husband, if allowed to testify, would have opined that the defendant accidentally copied her e-mail to D.L.

23

Even if we were to find the clerk-magistrate erred by declining to consider the defendant's accident defense and refusing to allow her husband to testify, we see no compelling reason to invalidate the complaint. The defendant was convicted of violating a harassment prevention order after having "the benefit of a full trial with jury . . . which was more than adequate to safeguard the defendant's rights" against any of the claimed errors made at the probable cause hearing. Irick, 58 Mass. App. Ct. at 133. "Because the defendant went to trial and was found guilty, there is no basis for a claim of prejudice resulting from a pretrial determination of probable cause." Commonwealth v. Huggins, 84 Mass. App. Ct. 107, 109-110 (2013), citing Commonwealth v. Greenwood, 78 Mass. App. Ct. 611, 622 (2011).

3. Other claims of error. Because we reverse on the grounds as stated, we do not reach the defendant's claims that the judge erred by admitting evidence of the defendant's prior bad acts, and excluding impeachment evidence pertaining to D.L., as these issues will not necessarily arise at a retrial based solely on the alleged violation of the order's no-contact provision. The defendant also claims that the prosecutor's "inflammatory" closing argument amounted to prejudicial error requiring reversal. While we need not decide these issues, we do take the opportunity to remind the Commonwealth that misuse

24

of prior bad act evidence may be grounds for reversal.  See

Commonwealth v. Howard, 469 Mass. 721, 744 (2014), S.C., 479

Mass. 52 (2018) ("using [evidence of] bad acts directly as

propensity evidence [in closing argument] is forbidden and

prejudicial").

Conclusion.  The judgment is reversed, and the verdict is

set aside.

So ordered.

By the Court (Milkey, Sacks &
   Smyth, JJ.[15]),

Clerk

Entered:  August 26, 2024.

---

[15] The panelists are listed in order of seniority.

25